[No. A064739. First Dist., Div. Four. Aug. 21, 1995.]

SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v.
W.R. GRACE & COMPANY-CONNECTICUT, Defendant and Respondent.

---

**COUNSEL**

Speights & Runyan, C. Alan Runyan, Thomas J. Brandi, Mylene L. Reuvekamp and Daniel U. Smith for Plaintiff and Appellant.

George A. Manfredi, David T. Biderman, Stacy Allen and Perkins Coie for Defendant and Respondent.

---

**OPINION**

**REARDON, J.**—When a building is constructed with asbestos-containing materials, does a property owner's cause of action for strict liability or negligence accrue on the owner's discovery of the mere presence of asbestos in the building or when asbestos contamination occurs? In this case, we hold—consistent with the vast majority of other jurisdictions that have considered this issue—that the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos manufacturer until contamination occurs. Thus, the statute of limitations in an asbestos-in-building case does not commence until there has been damage in the form of contamination.

In our case, respondent W.R. Grace & Company-Connecticut (Grace) obtained a summary judgment and dismissal of an asbestos-in-building action filed by appellant San Francisco Unified School District (SFUSD). The trial court denied SFUSD's motion for reconsideration of its conclusion that the action was barred by the statute of limitations. On appeal from both rulings,[1] SFUSD contends (1) that the trial court erred in finding that the limitations period commenced on discovery of the mere presence of asbestos

---

[1] SFUSD appeals both the order granting summary judgment and the order denying reconsideration of the order granting summary judgment. An order granting summary judgment is not an appealable order. (*Islander Yachts, Inc.* v. *One Freeport 36-Foot Vessel* (1985) 173 Cal.App.3d 1081, 1086, fn. 6 [219 Cal.Rptr. 654].) However, as the order granting summary judgment also purports to constitute a judgment, we will construe this aspect of the appeal to be one from the judgment, which is appealable. (See Code Civ. Proc., § 904.1, subd. (a)(1).) An order denying a motion for reconsideration is also a nonappealable order. (*Rojes* v.

in its buildings; (2) the limitations period was tolled during the period in which it was a member of a federal asbestos class action; and (3) when properly requiring contamination before accrual of this asbestos-in-building action, a triable issue of fact existed about when the limitations period commenced. As we agree with SFUSD's claims, we reverse and remand the judgment.

## I. FACTS

In July 1988, appellant SFUSD filed an action against respondent Grace and others,[2] alleging causes of action for strict liability, negligence, breach of implied warranty, fraud and civil conspiracy.[3] In its September 1989 third amended complaint, SFUSD alleged that between 1968 and 1973, six of its schools were constructed using asbestos-containing products. It also alleged that some of these asbestos-containing products have deteriorated such that immediate removal is necessary. SFUSD alleged that the release of asbestos fibers from these materials caused physical injury to its schools and posed a potential hazard to building users and visitors. It also alleges that as a result of this hazard, it has incurred and will incur costs to inspect its buildings, to determine the extent of damage, to repair that damage, and to implement and maintain a special operations and maintenance program. It also alleges damage resulting from the uninhabitability of its buildings during repair and the notice it must give to all persons who have been exposed to the asbestos in its buildings.

The third amended complaint also alleges that sometime after 1968 and continuing to the present time, asbestos fibers have been released, damaging the schools by contamination that was not and could not have been known until January 17, 1983. On that date, SFUSD became a member of a mandatory federal class action. (See *In re Asbestos School Litigation* (E.D. Pa. 1984) 104 F.R.D. 422, affd. in part and revd. in part (1986) 789 F.2d 996.) As a result of the filing of this federal action, SFUSD allegedly discovered the damage that before this time was not perceptible by reasonable means and of which it was blamelessly ignorant. On December 1, 1987,

*Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1160-1161 [250 Cal.Rptr. 435], overruled on another point in *Passavanti* v. *Williams* (1990) 225 Cal.App.3d 1602, 1607 [275 Cal.Rptr. 887].) However, SFUSD does not appear to raise any issues pertaining to the motion for reconsideration in its briefs. Thus, it appears to have abandoned its appeal from the order denying the motion for reconsideration. (*Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 576, fn. 6 [225 Cal.Rptr. 717].)

[2]Flintkote Corporation and Fibreboard Corporation were also named as defendants. They are not parties to this appeal.

[3]The action was originally filed in the City and County of San Francisco, but appears to have been moved to Sonoma County in August 1990.

SFUSD opted out of the federal class action. It alleges that the limitations period was tolled until that date as a result of that action.

Grace answered this complaint in November 1989, pleading as an affirmative defense the bar of the statute of limitations. In July 1993, Grace moved for summary judgment on statute of limitations grounds.[4] In September 1993, the trial court granted this motion, finding that the action was barred by the three-year statute of limitations period. (Code Civ. Proc., § 338.) The trial court found that contamination was not required before SFUSD's causes of action accrued; that SFUSD's awareness that its schools contained potentially damaging asbestos was sufficient to trigger commencement of the limitations period. It ruled that undisputed evidence established that SFUSD was put on notice of this fact before June 1, 1980. Thus, it reasoned, even if the limitations period was tolled from January 17, 1983, through December 1, 1987, as a result of the federal class action, the July 1988 action was not timely filed. SFUSD moved for reconsideration, which was denied in January 1994 for failure to present new facts or new law. An order granting summary judgment was filed, stating that SFUSD was entitled to recover nothing under this action.

## II. COMMENCEMENT OF LIMITATIONS PERIOD

### A. *Asbestos-in-building Cases*

First, SFUSD contends that the trial court adopted the wrong legal standard for commencing the limitations period in this asbestos-in-building action. It urges that the limitations period for a strict liability or negligence cause of action does not commence until asbestos contamination occurred —or reasonably should have been discovered to have occurred—in its buildings. For its part, Grace argues that the trial court correctly ruled that the statute of limitations began to run when SFUSD suffered appreciable harm resulting from the mere presence of potentially dangerous asbestos in its buildings.

Our resolution of this question lies at the intersection of two lines of California Supreme Court cases. We must be faithful to both principles establishing when a cause of action accrues for purposes of the statute of limitations and those cases defining what constitutes an injury for purposes of a strict liability or negligence cause of action. (See *Jolly* v. *Eli Lilly & Co.*

---

[4]The statute of limitations for an action for injury to real property is three years. (Code Civ. Proc., §§ 335, 338, subd. (b).) The parties do not appear to dispute this issue, but argue only about when that limitations period begins to run.

(1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923]; *Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9 [45 Cal.Rptr. 17, 403 P.2d 145].) Our analysis is further complicated by the practical difficulties presented in applying these generally accepted principles within the context of an asbestos-in-building case. As other courts around the country have noted, asbestos cases are unique in the law. (*Detroit Bd. of Educ.* v. *Celotex Corp.* (1992) 196 Mich.App. 694 [493 N.W.2d 513, 518].) The nature of the defect and the damage caused by asbestos differs from the defects and damages found in most other strict liability and negligence cases. (*Board of Educ.* v. *A, C and S, Inc.* (1989) 131 Ill.2d 428 [137 Ill.Dec. 635, 546 N.E.2d 580, 588].) In most cases in which delayed discovery of a cause of action arises, the injury is clear but the causation or the identity of the tortfeasor is not known. By contrast, in the typical asbestos-in-building case, the identity of the tortfeasor is known as is the fact that the building materials contain asbestos. What the plaintiff does not know is when the asbestos will become harmful—when it might injure those who occupy the building.

The physical danger to persons occupying a building containing asbestos begins when asbestos fibers become airborne. Respirable asbestos fibers may be released from friable asbestos-containing materials when these materials are disturbed. (*Adams-Arapahoe School Dist. No. 28-J* v. *GAF Corp.* (10th Cir. 1992) 959 F.2d 868, 870.) Friable asbestos material, "when dry, may be crumbled, pulverized, or reduced to powder by hand pressure, and includes previously nonfriable material after such previously nonfriable material becomes damaged to the extent that when dry it may be crumbled, pulverized, or reduced to powder by hand pressure." (40 C.F.R. § 763.83 (1990); *Adams-Arapahoe School Dist. No. 28-J* v. *GAF Corp.*, *supra*, at p. 870.) Thus, the timing problem unique to asbestos cases leads us to the unusual inquiry posed by this appeal—when does "injury" occur such that a strict liability or negligence cause of action accrues and the limitations period commences in an asbestos-in-building case?

## B. *Statute of Limitations*

Some background on statutes of limitations is helpful to understanding the issue presented in our case. SFUSD and Grace do not dispute the basic statute of limitations rules to be applied. The statute of limitations for injury to real property is three years. (Code Civ. Proc., § 338, subd. (b); *City of San Diego* v. *U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 578 [35 Cal.Rptr.2d 876].) The resolution of a statute of limitations defense is typically a factual question for the trier of fact. However, summary judgment is proper if the court can draw only one legitimate inference from uncontradicted

evidence about the limitations issue. (See *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1112; *City of San Diego* v. *U.S. Gypsum Co.*, *supra*, at p. 582; see also *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 406 [163 Cal.Rptr. 711].)

The gravamen of SFUSD's third amended complaint is in tort—specifically, its causes of action for strict liability and negligence. ▉ In tort actions, the statute of limitations commences when the last element essential to a cause of action occurs. (*City of San Diego* v. *U.S. Gypsum Co.*, *supra*, 30 Cal.App.4th at p. 582; *Leaf* v. *City of San Mateo*, *supra*, 104 Cal.App.3d at p. 406.) The statute of limitations does not begin to run and no cause of action accrues in a tort action until damage has occurred. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200-201, 203 [98 Cal.Rptr. 849, 491 P.2d 433] [negligence].) If the last element of the cause of action to occur is damage, the statute of limitations begins to run on the occurrence of "appreciable and actual harm, however uncertain in amount," that consists of more than nominal damages. (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 513-514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; *City of San Diego* v. *U.S. Gypsum Co.*, *supra*, 30 Cal.App.4th at pp. 582-583; see *Miller* v. *Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1623 [2 Cal.Rptr.2d 796].) ". . . [O]nce plaintiff has suffered actual and appreciable harm, neither the speculative nor uncertain character of damages nor the difficulty of proof will toll the period of limitation." (*Davies* v. *Krasna*, *supra*, at p. 514; *City of San Diego* v. *U.S. Gypsum Co.*, *supra*, at p. 583.) Cases contrast actual and appreciable harm with nominal damages, speculative harm or the threat of future harm. The mere breach of duty—causing only nominal damages, speculative harm or the threat of future harm not yet realized—normally does not suffice to create a cause of action. (*Davies* v. *Krasna*, *supra*, 14 Cal.3d at p. 513; *Budd* v. *Nixen*, *supra*, at p. 200; *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158, 176 [169 Cal.Rptr. 136]; see *Anthony* v. *Kelsey-Hayes Co.* (1972) 25 Cal.App.3d 442, 447 [102 Cal.Rptr. 113].)

▉ The common law rule that a cause of action accrued on the date of injury has been modified by the discovery rule. (*Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1109.) Under the discovery rule, a cause of action does not accrue until the plaintiff either discovers the injury and its negligent cause or could have discovered the injury and cause through the exercise of reasonable diligence. (*Ibid.*; *Leaf* v. *City of San Mateo*, *supra*, 104 Cal.App.3d at p. 407.) The statute of limitations begins to run when the plaintiff suspects or should suspect that his or her injury was caused by wrongdoing—when the plaintiff has notice of information or circumstances that would put a reasonable person on inquiry. The plaintiff need not be

, aware of the specific facts necessary to establish the claim—these facts can be determined during pretrial discovery. Once a plaintiff suspects wrongdoing and therefore has an incentive to sue, he or she must decide whether to file suit or sit on his or her rights. When a suspicion exists, the plaintiff must go find the facts; he or she cannot wait for the facts to find him or her. (*Jolly* v. *Eli Lilly & Co.*, *supra*, at pp. 1110-1111, 1114; *Baright* v. *Willis* (1984) 151 Cal.App.3d 303, 312 [198 Cal.Rptr. 510].)

## C. *Physical Injury*

As the limitations period cannot begin to run until damage occurs, we must consider what constitutes the element of damage for purposes of strict liability and negligence. In a landmark strict liability case that has since achieved nationwide influence, the California Supreme Court ruled that plaintiffs may recover in tort for physical injury to person or property, but not for purely economic losses that may be recovered in a contract action. (*Seely* v. *White Motor Co.*, *supra*, 63 Cal.2d at pp. 18-19.) Since *Seely* was announced 30 years ago, other California courts have applied the same reasoning to other tort causes of action, such as negligence. (See *Sacramento Regional Transit Dist.* v. *Grumman Flxible* (1984) 158 Cal.App.3d 289, 294, 298 [204 Cal.Rptr. 736]; *Anthony* v. *Kelsey-Hayes Co.*, *supra*, 25 Cal.App.3d at pp. 446-447.) ▮ Until physical injury occurs—until damage rises above the level of mere economic loss—a plaintiff cannot state a cause of action for strict liability or negligence. (See, e.g., *Adams-Arapahoe School Dist. No. 28-J* v. *GAF Corp.*, *supra*, 959 F.2d at p. 871.)[5]

The distinction between contract recovery for economic loss and tort recovery for physical injury is not an arbitrary one, as the *Seely* court explained. It rests on an understanding of the nature of the responsibility that a manufacturer must undertake in distributing products. A manufacturer may properly be held liable for physical injuries caused by defects by requiring

---

[5]"Economic loss" as enunciated in *Seely* has been defined as the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. (*City of Manchester* v. *National Gypsum Co.* (D.R.I. 1986) 637 F.Supp. 646, 650.) " '. . . [E]conomic loss generally means pecuniary damage that occurs through loss of value or use of the goods sold or the cost of repair together with consequential lost profits *when there has been no claim of personal injury or damage to other property.*' " (*MDU Resources Group* v. *W.R. Grace and Co.* (8th Cir. 1994) 14 F.3d 1274, 1279, italics in original, cert. den. __ U.S. __ [130 L.Ed.2d 40, 115 S.Ct. 89], quoting *Cooperative Power* v. *Westinghouse Elec.* (N.D. 1992) 493 N.W.2d 661, 663, fn. 5.) For example, the reduction of fair market value of buildings found to contain asbestos building materials may constitute an economic loss that cannot be recovered in tort in a strict liability or negligence action. Under the *Seely* analysis, no physical harm to persons or property has yet occurred—only economic losses that cannot be recovered in a strict liability or negligence case.

goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. However, it cannot be held liable for the level of performance of products in the customer's business unless the manufacturer agreed that the product was designed to meet the customer's demands. A consumer should not be charged with bearing the risk of physical injury when a product is purchased, but can fairly be charged with the risk that the product will not match economic expectations unless the manufacturer agrees that it will. (*Seely* v. *White Motor Co., supra*, 63 Cal.2d at p. 18; *Adams-Arapahoe School Dist. No. 28-J* v. *GAF Corp., supra*, 959 F.2d at p. 872; see *City of Manchester* v. *National Gypsum Co., supra*, 637 F.Supp. 646, 650 [tort obligations based on law; contract obligations based on contract].)

*Seely* has been widely cited in federal, California and other state decisions for this physical injury/economic loss distinction in tort/contract cases. In other jurisdictions, asbestos defendants have argued that plaintiffs bringing tort actions in asbestos-in-building cases should be limited to recovery for economic loss. In many of these cases, the *Seely* distinction between economic loss and physical harm was the basis for the rejection of this argument. (See, e.g., *T.H.S. Northstar Assoc.* v. *W.R. Grace & Co.* (D.Minn. 1991) 767 F.Supp. 969, 970-974 [Minnesota]; *Clayton Center Assoc.* v. *W.R. Grace & Co.* (Mo.App. 1993) 861 S.W.2d 686, 692-693 [Missouri]; *City of Manchester* v. *National Gypsum Co., supra*, 637 F.Supp. at pp. 648-652 [New Hampshire]; *City of Greenville* v. *W.R. Grace & Co.* (4th Cir. 1987) 827 F.2d 975, 976-978 [South Carolina].) Apparently, no jurisdiction considering the issue has applied the economic loss doctrine in the context of an asbestos-in-building case. (*Detroit Bd. of Educ.* v. *Celotex Corp., supra*, 493 N.W.2d at p. 518 [Michigan]; see *Hebron Public Sch. D. No. 13* v. *U.S. Gypsum* (D.N.D. 1988) 690 F.Supp. 866, 870 [North Dakota; noting that dominant line of cases rejects economic loss theory application in asbestos-in-building cases].) Some of these out-of-state cases specifically cite and discuss *Seely*. (See, e.g., *Adams-Arapahoe School Dist. No. 28-J* v. *GAF Corp., supra*, 959 F.2d at p. 871 [Colorado]; *Board of Educ.* v. *A, C and S, Inc., supra*, 546 N.E.2d at p. 590 [Illinois]; *Town of Hooksett School Dist.* v. *W.R. Grace Co.* (D.C.N.H. 1984) 617 F.Supp. 126, 129-131 [New Hampshire]; *MDU Resources Group* v. *W.R. Grace and Co., supra*, 14 F.3d at p. 1278, fn. 5 [North Dakota].)

Other jurisdictions that adopt *Seely*'s physical injury/economic loss distinction routinely find that asbestos contamination constitutes the physical injury element of strict liability or negligence causes of action in an asbestos-in-building case. The dangerousness that creates a risk of harm alone has been held to be insufficient to support an award of damages—there must be

physical harm caused by that product. (*Board of Educ.* v. *A, C and S, Inc.*, *supra*, 546 N.E.2d at p. 587.) At the release of asbestos fibers into the environment, the cause of action has been held to accrue and the statute of limitations to begin to run. (*Kansas City* v. *W.R. Grace & Co.* (Mo.App. 1989) 778 S.W.2d 264, 268.) The injury for which asbestos plaintiffs are being recompensed has been found to be the contamination of their buildings, not the mere presence of asbestos. (*MDU Resources Group* v. *W.R. Grace and Co.*, *supra*, 14 F.3d at p. 1279.) The injury has been found to be the contamination of public buildings with asbestos fibers which endanger the lives and health of the building's occupants. (*City of Greenville* v. *W.R. Grace & Co.*, *supra*, 827 F.2d at pp. 977-978.)

In a case similar to the one before us, the Tenth Circuit of the United States Court of Appeal considered whether a Colorado public school district had suffered an injury for purposes of causes of action for negligence or strict liability, to permit recovery of the cost of removing asbestos-containing floor tile. (*Adams-Arapahoe School Dist. No. 28-J* v. *GAF Corp.*, *supra*, 959 F.2d at p. 870, fn. 3.) The district alleged that it had suffered three separate injuries—from the mere presence of the asbestos floor tile, from the nature of the risk inherent in the asbestos tile, and from the nature of contamination caused by past releases of asbestos fibers from the asbestos tile. (*Id.* at p. 871.) The Tenth Circuit found that only contamination constituted a compensable injury. (*Id.* at pp. 871-873.) Damage from the mere presence of vinyl asbestos floor tile may not be recovered under Colorado tort law, nor may the school district recover for the mere risk of harm emanating therefrom. These are not physical injuries that have yet been suffered, the Tenth Circuit reasoned. ". . . [O]nly asbestos contamination constitutes a physical injury compensable under tort law." (*Id.* at p. 872.)

D. *Physical Injury in Asbestos-in-building Cases*

 We have seen that *Seely* precludes recovery for economic loss in a strict liability or negligence cause of action. Cases from other jurisdictions illustrate the significance of this principle in the context of an asbestos-in-building case—it precludes tort recovery for the loss of economic value of the buildings simply because they contain asbestos. As no cause of action could be stated for strict liability or negligence in an asbestos-in-building case without physical injury to person or property, *Seely* compels the conclusion that a tort cause of action cannot accrue until physical injury occurs. Once physical injury to property occurs—assuming that damage is the last element of the tort cause of action to occur—the cause of action accrues and the limitations period commences.

In our case, the trial court based its summary judgment order on its holding that the mere presence of asbestos in SFUSD's buildings constitutes the injury required in a strict liability or negligence case. However, this conclusion would permit a plaintiff to recover purely economic contract damages in tort, contrary to the command of *Seely*. As other jurisdictions have noted, the risk of contamination endangering a building's occupants is not the type of risk that is normally allocated between parties to a contract by agreement. (See, e.g., *City of Greenville* v. *W.R. Grace & Co., supra*, 827 F.2d at pp. 976-978 [under South Carolina law, asbestos-in-building plaintiff may state cause of action for negligence].) In order to be consistent with the principles of *Seely*, it appears that until contamination occurs, the only damages that arise are economic losses that do not constitute physical injury to property recoverable in strict liability or negligence. Physical injury resulting from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action for strict liability or negligence can accrue in an asbestos-in-building case and the limitations period commence.

However, to be valid, our conclusion must also be consistent with those California Supreme Court cases delineating when a cause of action accrues and the statute of limitations period begins to run. (See *Jolly* v. *Eli Lilly & Co., supra*, 44 Cal.3d at pp. 1110-1111; *Davies* v. *Krasna, supra*, 14 Cal.3d at p. 513; *Budd* v. *Nixen, supra*, 6 Cal.3d at p. 200.) We have seen that these cases hold that when injury or damage is the last element of a tort cause of action to occur, the cause of action accrues once any actual and appreciable harm has occurred. Actual, appreciable harm is contrasted with nominal damages, speculative harm or the threat of future harm. (See *Davies* v. *Krasna, supra*, at p. 513; *Budd* v. *Nixen, supra*, at p. 200; *Alhino* v. *Starr, supra*, 112 Cal.App.3d at p. 176; *Anthony* v. *Kelsey-Hayes Co., supra*, 25 Cal.App.3d at p. 447.) If the mere presence of asbestos constitutes only a threat of future harm, we may conclude that asbestos contamination is the appreciable harm that forms the damage element of a strict liability or negligence cause of action. This analysis would allow us to fashion a rule that is consistent with both lines of California Supreme Court authority—the *Seely* cases on physical injury in a strict liability or negligence context and the cases allowing the commencement of the statute of limitations once any appreciable harm has been realized.

E. *Consistency With California Cases*

One published California case has addressed the question of when appreciable harm occurs in an asbestos-in-building case for purposes of commencement of the statute of limitations, coming to a different conclusion

than we have reached. (See *City of San Diego* v. *U.S. Gypsum Co.*, *supra*, 30 Cal.App.4th 575.) In that case, the City of San Diego argued that the limitations period did not commence until each building was contaminated by a significant release of asbestos fibers or dust, posing a human health hazard. (*Id.* at pp. 581-582.) Division Six of the Second District disagreed, holding that ". . . appreciable harm is not limited to the existence of an actual health hazard. As pleaded, the city's knowledge of deterioration to its buildings caused by asbestos constitutes the infliction of an appreciable harm that begins the statute of limitations running." (*Id.* at p. 578.) Thus, it impliedly held that the mere presence of asbestos constitutes injury, necessarily finding that injury occurs before contamination.

We find the *City of San Diego* analysis to be unsatisfactory, for several reasons. First, the *City of San Diego* court purported not to resolve the contamination issue, while acknowledging that the city's contamination argument was inconsistent with its ruling. (See *City of San Diego* v. *U.S. Gypsum Co.*, *supra*, 30 Cal.App.4th at p. 590.) Second, while it based its ruling on the appreciable harm line of cases, the Second District did not discuss whether its finding of appreciable harm was consistent with those cases requiring physical injury for purposes of strict liability or negligence causes of action. (*Id.* at pp. 583, 590; see *Seely* v. *White Motor Co.*, *supra*, 63 Cal.2d 9.) Instead, it applied its interpretation of what constitutes appreciable harm—anything more than nominal damages—at the expense of *Seely*, suggesting that those out-of-state cases that have accepted the contamination argument conflict with the accrual of a cause of action on the occurrence of appreciable harm. (See *City of San Diego* v. *U.S. Gypsum Co.*, *supra*, at pp. 582, 590.)

In our view, this is where the *City of San Diego* court's analysis falters. It interprets any moneys spent that constitute more than nominal damages as the appreciable harm that triggers the commencement of the statute of limitations without considering whether any physical injury has yet occurred. A careful reading of the appreciable harm cases reveals that they contrast appreciable harm with nominal damages *or* speculative harm *or* a threat of future harm. (See *Davies* v. *Krasna*, *supra*, 14 Cal.3d at p. 513; *Budd* v. *Nixen*, *supra*, 6 Cal.3d at p. 200; *Alhino* v. *Starr*, *supra*, 112 Cal.App.3d at p. 176; *Anthony* v. *Kelsey-Hayes Co.*, *supra*, 25 Cal.App.3d at p. 447.) Testing and investigation are typically undertaken once a responsible property owner discovers that asbestos may be present in its building. But the act of testing and investigating which discloses no contamination cannot be equated with the actual harm of contamination. At best, such testing and investigation could show a threat of future harm. In light of the

"threat of future harm" cases and the unique analytical problems posed by an asbestos-in-building case, we may reasonably conclude that the California Supreme Court did not intend such a result. These expenses may be found to have been undertaken to determine when the threat of future harm ripens into appreciable, actual harm for purposes of the accrual of a tort cause of action.

Our holding would also be consistent with other relevant California authority. Neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the limitations period. (*Davies* v. *Krasna*, *supra*, 14 Cal.3d at p. 514; *Miller* v. *Lakeside Village Condominium Assn.*, *supra*, 1 Cal.App.4th at p. 1623.) The extent of damage is not an element of a cause of action in tort. (*Id.* at p. 1623.) However, in an asbestos-in-building case, the *extent* of damage is not at issue—it is the *existence* of injury that is uncertain. ▮▮▮ Last year, the California Supreme Court stated that ignorance of the existence of an injury may delay the running of the statute of limitations until the date of discovery. (*Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932 [30 Cal.Rptr.2d 440, 873 P.2d 613].) While an aggrieved party generally need not know the exact manner in which its injuries were effected, the plaintiff must know of the existence of injury. (*Ibid.*) The discovery rule is based on the notion that statutes of limitation are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights. Thus, the limitations period should not be interpreted to bar a victim of wrongful conduct from asserting a cause of action before he or she could reasonably be expected to discover its existence. (*CAMSI IV* v. *Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1536 [282 Cal.Rptr. 80].) The plaintiff must be aware of the physical manifestation of the injury for the cause of action to accrue and the statute of limitations to begin running. (See *Rose* v. *Fife* (1989) 207 Cal.App.3d 760, 768 [255 Cal.Rptr. 440].) By contrast, to find—as *City of San Diego* v. *U.S. Gypsum Co.*, *supra*, 30 Cal.App.4th 575, necessarily did—that the mere presence of asbestos in a building constitutes an appreciable, actual injury—would be inconsistent with at least three California Supreme Court cases. (See *Davies* v. *Krasna*, *supra*, 14 Cal.3d 502; *Budd* v. *Nixen*, *supra*, 6 Cal.3d 195; *Seely* v. *White Motor Co.*, *supra*, 63 Cal.2d 9.) If the California Supreme Court intended to overrule these cases, it is unlikely that it would do so—especially a landmark case such as *Seely*—sub silentio.

We see no inconsistency between our holding and the Supreme Court's decision in *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d 1103. In *Jolly*, a woman who suspected that she had been injured by her mother's ingestion of a prescription drug, but who did not know—and did not investigate to

learn—the name of the manufacturer, was held to have lost her right to bring a personal injury action due to the passage of time. Ignorance of the legal significance of known facts or the identity of the defendant does not delay the running of the statute of limitations. Only ignorance of one or more critical facts could have that effect. (*Id.* at p. 1110.) The high court disapproved an appellate decision holding that the statute of limitations did not begin to run until the plaintiff knew or reasonably should have known of the facts constituting wrongful conduct, as well as the fact of her injury and its connection to the drug. (*Ibid.*) Assuming that injury has already occurred, once the plaintiff suspects wrongdoing, the statute of limitations begins to run. (*Id.* at p. 1111.)

The issue presented by our case is distinguishable from that presented in *Jolly*. SFUSD does not ask whether wrongdoing occurred, but what constitutes an injury in the context of an asbestos-in-building case. Injury and wrongdoing are distinct legal issues. (See *Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1112.) The word "injury" is a term of art referring to the damaging effect of the wrongful act, not the act itself. (See *Zambrano* v. *Dorough* (1986) 179 Cal.App.3d 169, 172 [224 Cal.Rptr. 323].) Last year, the California Supreme Court distinguished between ignorance of the identity of the wrongdoer and ignorance of the injury itself. (See *Bernson* v. *Browning-Ferris Industries, supra,* 7 Cal.4th at p. 932.) As *Jolly* assumes injury has occurred, *Jolly* may reasonably be read to apply when the issue is wrongdoing, but not when the issue is what constitutes injury.

The California Supreme Court has recognized that in unusual cases, a plaintiff may be aware of wrongdoing before damage arises. Ordinarily, a plaintiff has already suffered damage by the time the tortious conduct is discovered. Only in an unusual case will the plaintiff discover a defendant's negligence without having suffered any consequential damage. (See *Budd* v. *Nixen, supra,* 6 Cal.3d at p. 201 [legal malpractice case].) As asbestos-in-building cases are admittedly unique because of the dormant period before asbestos becomes friable, it seems reasonable to infer that contamination often arises after evidence of wrongdoing—the installation of potentially dangerous asbestos—has been discovered.

F. *Consistency With Other Jurisdictions*

The contamination rule would have the added benefit of consistency with decisions from most other jurisdictions in the United States. Asbestos in buildings is, after all, a nationwide problem. ". . . [M]ost if not all jurisdictions deciding 'asbestos in buildings' cases have ruled contamination constitutes physical injury compensable in tort." (*Adams-Arapahoe School Dist.*

*No. 28-J* v. *GAF Corp.*, *supra*, 959 F.2d at p. 873.) Until asbestos contamination occurs—until asbestos fibers are released into the air, no cause of action for negligence or strict liability accrues in an asbestos-in-building case. (*Id.* at p. 872 [Colorado]; *State Farm Mut. Auto. Ins.* v. *W.R. Grace & Co.* (C.D.Ill. 1992) 834 F.Supp. 1046, 1048-1049, affd. 24 F.3d 955, cert. den. __ U.S. __ [130 L.Ed.2d 212, 115 S.Ct. 298] [Illinois]; *Farm Credit Bank of Louisville* v. *USMP* (W.D.Ky. 1994) 864 F.Supp. 643, 650-651 [Kentucky]; *Kansas City* v. *W.R. Grace & Co.*, *supra*, 778 S.W.2d at p. 268 [Missouri]; *MDU Resources Group* v. *W.R. Grace and Co.*, *supra*, 14 F.3d at p. 1279 [North Dakota].) In such jurisdictions, the relevant inquiry under the discovery rule is when did plaintiff know that asbestos was being released from the asbestos-containing material and thus presented a hazard. (See *State Farm Mut. Auto. Ins.* v. *W.R. Grace & Co.*, *supra*, 834 F.Supp. at pp. 1048-1049.)

In cases arising in somewhat different contexts, other states have ruled that the injury in an asbestos-in-building case is the contamination of the building with asbestos fibers. (*Board of Educ.* v. *A, C and S, Inc.*, *supra*, 546 N.E.2d at p. 588 [Illinois]; *City of Greenville* v. *W.R. Grace & Co.*, *supra*, 827 F.2d at pp. 977-978 [South Carolina]; see *City of Manchester* v. *National Gypsum Co.*, *supra*, 637 F.Supp. at pp. 651-652 [New Hampshire; allegation of contamination is sufficient physical harm to state claims for negligence and strict liability].) These rulings make it likely that the courts of these states will also find that a tort cause of action for damage to a building from asbestos accrues only on contamination.

Only two states have found that the cause of action accrues before contamination occurs. (*Detroit Bd. of Educ.* v. *Celotex Corp.*, *supra*, 493 N.W.2d at pp. 519-520 [in Michigan, knowledge of potential hazard is sufficient to begin running of limitations period]; *Maryland Cas. Co.* v. *W.R. Grace and Co.* (2d Cir. 1993) 23 F.3d 617, 627, cert. den. __ U.S. __ [130 L.Ed.2d 559, 115 S.Ct. 655] [in New York insurance policy, "damage" occurs on installation of asbestos products in buildings; "injury" is presence of asbestos hazard].) One of those cases—arising in New York—may be distinguishable as one arising in contract, rather than in tort. (See, e.g., *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 813-814, 818 [274 Cal.Rptr. 820, 799 P.2d 1253] [decision was based on contract language, not social policy considerations].)

G. *Conclusion—Contamination Is Appreciable Harm in Asbestos-in-building Cases*

A reasoned analysis of the issues posed by our case requires us to weave new cloth in order to be consistent with both statute of limitations/accrual of

cause of action principles enunciated by the California Supreme Court and its landmark case defining what constitutes "injury" for purposes of strict liability and negligence causes of action. In California, no cause of action accrues—i.e., the statute of limitations does not commence—until all elements of the cause of action, including that of damage or injury, have occurred. There must be appreciable harm before the damage element of a cause of action accrues, triggering the commencement of the limitations period. In a strict liability or negligence case, the compensable injury must be physical harm to persons or property, not mere economic loss. Accordingly, we hold that in an asbestos-in-building case, the mere presence of asbestos constitutes only a threat of future harm. Contamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitations period commences.

### III. TRIABLE ISSUE OF FACT

SFUSD also contends that—applying the correct legal standard for commencement of an action—a triable issue of fact existed about whether it knew or should have known that three schools were damaged by the release of asbestos fibers before June 1980. As we have found, a strict liability or negligence cause of action accrues in an asbestos-in-building case when the building becomes contaminated or the plaintiff should have known that contamination had occurred. Contamination constitutes injury—when injury is the last element of the cause of action for strict liability or negligence to occur, the cause of action accrues and the statute of limitations begins to run when contamination occurs. (See pt. II, *ante.*)

Clearly, a different result might have been reached on the motion for summary judgment had the trial court applied a contamination rather than a mere presence of asbestos standard for commencement of the limitations period. What is not clear to us on this record is whether or not Grace's statute of limitations defense may be resolved as a matter of law. Certain facts are established. The original complaint in this action was filed on July 29, 1988. The parties agreed to toll the limitations period for 60 days between May 2 and July 2, 1988. The three-year limitations period applies. (Code Civ. Proc., § 338, subd. (b).) SFUSD also contends that the limitations period was tolled from January 17, 1983, through December 1, 1987, during the time when it was a member of the class in the federal asbestos class action. (See pt. IV, *post.*)

SFUSD claims that the evidence is undisputed that there was no unacceptable contamination before May 28, 1985. However, the dates of actual

contamination of each school[6] are issues of fact for a jury to resolve, unless the trial court finds that these factual issues may be resolved as a matter of law. As the trial court erroneously focused on when SFUSD was put on notice that its schools contained potentially dangerous asbestos, we think it prudent to remand this matter to the trial court for a determination of when contamination occurred at each school or when SFUSD should reasonably have discovered that each school's contamination occurred. If the issue can be resolved as a matter of law, the trial court shall make the appropriate summary judgment order.[7] If the matter cannot be resolved as a matter of law, the trier of fact shall determine any unresolved issues.

## IV. FEDERAL PRECLUSION

### A. *Facts*

As this matter is to be remanded to the trial court (see pt. III, *ante*), we deem it appropriate to address one other substantive legal issue. Grace contends that the federal asbestos class action did not toll the statute of limitations period during SFUSD's membership in the class. For its part, SFUSD argues that the limitations period was tolled from the inception of the federal class action until it opted out of the class.

Grace does not dispute the facts alleged in SFUSD's complaint. On January 17, 1983, SFUSD became a member of a mandatory federal class action. (See *In re Asbestos School Litigation*, *supra*, 104 F.R.D. 422.) It opted out of this class action on December 1, 1987. In its complaint, SFUSD alleged that the statute of limitations was tolled for the period between these two dates. The trial court did not rule on this issue, finding the action was untimely even if tolling had occurred.

### B. *Applicable Law*

The United States Supreme Court has held that the filing of a class action tolls the applicable statute of limitations for all class members. (*Crown, Cork & Seal Co.* v. *Parker* (1983) 462 U.S. 345, 352-353 [76 L.Ed.2d 628, 635-636, 103 S.Ct. 2392]; *Eisen* v. *Carlisle & Jacquelin* (1974) 417 U.S. 156, 176, fn. 13 [40 L.Ed.2d 732, 748, 94 S.Ct. 2140]; *American Pipe & Construction Co.* v. *Utah* (1974) 414 U.S. 538, 552-556 [38 L.Ed.2d 713, 725-728, 94 S.Ct. 756]; see *May* v. *AC & S, Inc.* (E.D.Mo. 1993) 812 F.Supp.

---

[6]SFUSD alleges that each of the six schools in which asbestos was installed were built at different times, with construction beginning between 1968 and 1973. Thus, the factual question of when contamination occurred must be resolved on a building-by-building basis.

[7]Code of Civil Procedure section 437c—as recently amended—will apply on remand.

934, 939.) In *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at pages 1118-1126, the California Supreme Court discussed these United States Supreme Court cases. It stated that it was not bound by these cases, but considered their applicability. (*Id.* at pp. 1118-1119.) Then, *Jolly* declined to "extend" the United States Supreme Court cases to a mass-tort class action situation presented by a prescription drug litigation case. (*Id.* at pp. 1122, 1124.) The court noted that the two policy considerations underlying the tolling rule are to protect the efficiency and economy of litigation and to protect the defendant from unfair claims. (*Id.* at p. 1122.) It did not apply the United States Supreme Court cases because the prescription drug class action complaint "neither sufficiently put defendants on notice of the substance and nature of plaintiff's claims, nor served to further economy and efficiency of litigation . . . ." (*Ibid.*) The court did not establish a blanket rule against tolling, but determined that each case should be analyzed to determine whether claims asserted in the class action have placed the defendant on notice of the claims at issue in the individual action. (See *id.* at pp. 1122-1123.)

One appellate decision discusses *Jolly* in the context of tolling limitations periods. (See *Becker* v. *McMillin Construction Co.* (1991) 226 Cal.App.3d 1493 [277 Cal.Rptr. 491].)[8] In a mass construction defect context, *Becker* held that tolling was proper. (*Id.* at p. 1502.) The court reviewed the findings of *Jolly* on tolling, concluded that the California Supreme Court's holding was a narrow one, and applied the United States Supreme Court cases in a factually different context from the mass tort personal injury case presented in *Jolly*. ". . . [I]t is possible for some prior class actions based on tort, particularly property damage cases, to provide adequate notice to a defendant so that tolling is proper . . . ." (*Id.* at p. 1501.) Although the lack of commonality led to denial of class certification, the *Becker* court found that the substantive class and individual claims were sufficiently similar to give the developer notice of the litigation for purposes of applying the tolling rule. (*Ibid.*) The class action alleged claims for negligence and strict liability—the same claims that Becker later raised in his individual action. (See *id.* at pp. 1496, 1501-1502.) Once the class action was filed, the developer was aware of the need to preserve evidence and witnesses regarding the claims of all class members. (*Id.* at p. 1501.) The experienced developer was expected to have a general familiarity with the nature of the claims alleged against it. Variations of proof in causation and damage were not held to be as extreme in the construction defect context as they would be in personal injury mass tort cases. Therefore, "[r]ules regarding notice should accordingly be less stringent for this type of property damage where tolling is

---

[8]The California Supreme Court denied a petition for review in *Becker*. (*Becker* v. *McMillin Construction Co.*, *supra*, 226 Cal.App.3d at p. 1503.)

concerned." (*Id.* at p. 1502.) The court added a final warning against a "too-liberal interpretation" of the United States Supreme Court's tolling rule. (*Ibid.*)

C. *Lack of Notice*

On a number of grounds, Grace urges that the limitations period was not tolled for the time during which SFUSD was a member of the class in the national asbestos class action. SFUSD protests that Grace waived its challenge for lack of notice by failing to raise it in the trial court. SFUSD claims that Grace never asserted as one of its undisputed material facts that it lacked notice of SFUSD's claims, such that there is no evidence to support Grace's lack of notice argument. It also argues that it has been prejudiced by Grace's raising this "fact-based claim" on appeal after the time to conduct discovery about Grace's notice has passed. Thus, SFUSD contends that Grace waived its attack on class action tolling by failing to dispute the extent of Grace's knowledge of SFUSD's claims. The trial court did not rule on tolling only because it found that the action was untimely even if the limitations period was tolled as SFUSD alleged that it was. Given our remand of this matter, the tolling issue will have to be resolved in order for the trial court to rule on the remaining issues. Thus, we find it appropriate to address the merits of this question.

Grace first argues that the federal class action did not provide it with meaningful notice of SFUSD's claims against Grace. It emphasizes language in *Jolly* suggesting that mass tort actions are often inappropriate for class action certification and do not lend themselves to tolling. (See *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at pp. 1121, 1123.) In *Jolly,* the California Supreme Court explained that "[t]he major elements in tort actions for personal injury—liability, causation, and damages—may vary widely from claim to claim . . . ." (*Id.* at p. 1123.) ". . . [P]ersonal-injury mass-tort class-action claims can rarely meet the community of interest requirement in that each member's right to recover depends on facts peculiar to each particular case," these claims being held to be "presumptively incapable of apprising defendants of 'the substantive claims being brought against them'." (*Id.* at p. 1125.) It is presumed that the lack of commonality of interest will defeat certification and preclude application of the United States Supreme Court cases requiring tolling of the limitations period. (*Ibid.*)

However, as SFUSD argues, its asbestos claims are more similar to the property damage claims for which tolling was allowed in *Becker* than the prescription drug personal injury claims in *Jolly*. (See *Becker* v. *McMillin*

*Construction Co., supra*, 226 Cal.App.3d 1493.) The federal class action for asbestos-in-building cases appears to raise the same issues that SFUSD's case does—tort causes of action raised by school districts around the country against asbestos manufacturers and sellers such as Grace, attempting to recover costs of asbestos abatement from those manufacturers and sellers rather than charging them to public taxpayers. Once the national asbestos in schools litigation had begun, Grace and other asbestos defendants were on notice that districts throughout the country would seek to recover the costs of asbestos abatement. What products were sold to which schools, the level of asbestos in each of them, and other issues of proof and defense were clearly at issue. Unlike *Jolly*, there are no individual plaintiffs whose medical histories raise differing issues that do not lend themselves to resolution in a class action. Grace urges that the number of claimants in the original class militates against tolling, but other factors favor tolling—the federal class members raised the same claim affecting the same subject matter, and the members could be identified through public contracts for the purchase and installation of building materials containing asbestos. As we conclude that the property damage claim SFUSD raises is closer to that raised in *Becker* than those raised in *Jolly*, we reject Grace's claim that the federal class action did not give it sufficient notice of the claims that SFUSD now raises.

## D. *Federal Effect on State Limitations Periods*

Next, Grace contends that it is unwise for California to permit federal courts to dictate a tolling effect on state statutes of limitations. The asbestos class action of which SFUSD was a member was filed in federal court. (See *In re Asbestos School Litigation, supra*, 104 F.R.D. 422.) Contrary to Grace's argument, we believe that the fact that the class action was filed in federal court makes it *more* likely that the United States Supreme Court cases apply. The United States Supreme Court is the ultimate authority on the meaning of Federal Rules of Civil Procedure, which was the basis of these decisions. These procedural rules apply in all federal courts, including the federal asbestos class action. Under the supremacy clause, these decisions have the force of law in California if the class action was filed in federal court. (See U.S. Const., art. VI, cl. 2.) At least one federal district court has noted that not one of the three key United States Supreme Court cases on tolling has "limited its holding to federal statutes of limitations." (*May v. AC & S, Inc., supra*, 812 F.Supp. at p. 939.)

California has adopted somewhat different state class action rules and thus only considers federal decisions about federal rules to be persuasive to the extent that state and federal rules parallel each other and state policy

considerations are similar to those underlying the federal rules. (See *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at pp. 1118-1119 [use federal procedures in absence of controlling state authority].) However, in both *Jolly* and *Becker*, the underlying class actions and the subsequent individual actions were brought in state court. (See *id.* at pp. 1106, 1118; *Becker* v. *McMillin Construction Co.*, *supra*, 226 Cal.App.3d at pp. 1496-1497.) Thus, SFUSD's case is distinguishable from these state class action cases.

### E. *Certification*

Grace also argues that a plaintiff who opts out of a certified class is not entitled to tolling. In our case, the class was certified in the federal action on September 28, 1984. (See *In re Asbestos School Litigation*, *supra*, 104 F.R.D. at p. 433, affd. 789 F.2d at pp. 998-999.) In both *Jolly* and *Becker,* class certification was denied. (See *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1118; *Becker* v. *McMillin Construction Co.*, *supra*, 226 Cal.App.3d at p. 1496.) None of the cases that Grace cites in its brief for this proposition were published, making their citation improper. (See Cal. Rules of Court, rule 977(a).) Our independent research revealed one Michigan appellate court decision holding that a school district that opted out of the federal asbestos class action before it was certified was not entitled to toll the limitations period for a separate state action. (*Warren Schools* v. *W.R. Grace & Co.* (1994) 205 Mich.App. 580 [518 N.W.2d 508, 511].) Still, other courts have applied the United States Supreme Court decisions to toll the limitations period when a plaintiff opts out of the class. (See, e.g., *Adams Public School Dist.* v. *Asbestos Corp., Ltd.* (8th Cir. 1993) 7 F.3d 717, 718, fn. 1; *Tosti* v. *City of Los Angeles* (9th Cir. 1985) 754 F.2d 1485, 1488 [limitations period begins to run again when plaintiff opts out of federal class action]; *May* v. *AC & S, Inc.*, *supra*, 812 F.Supp. at p. 939; *Independent School Dist. No. 197* v. *W.R. Grace* (D.Minn. 1990) 752 F.Supp. 286, 291, fn. 3.) Most persuasively, two of the United States Supreme Court cases interpreting the seminal tolling case appear to assume that a class member who opts out would be entitled to the benefit of the tolling rule. (See *Crown, Cork & Seal Co.* v. *Parker*, *supra*, 462 U.S. at p. 351 [76 L.Ed.2d at p. 634]; *Eisen* v. *Carlisle & Jacquelin*, *supra*, 417 U.S. at p. 176, fn. 13 [40 L.Ed.2d at p. 748]; see also *Tosti* v. *City of Los Angeles*, *supra*, at p. 1488.) Thus, we are satisfied that a plaintiff who opts out of a federal class action is entitled to have the limitations period tolled during the time when it was a member of the class.

### F. *Equitable Grounds*

Finally, Grace urges that tolling the limitations period is an equitable doctrine and that it would be inequitable to do so in the instant case. The

application of the doctrine of equitable tolling of statutes of limitations requires lack of prejudice to the defendant and good faith conduct on the part of the plaintiff. (*Addison* v. *State of California* (1978) 21 Cal.3d 313, 319 [146 Cal.Rptr. 224, 578 P.2d 941].) Grace contests SFUSD's claim that its asbestos-containing materials contaminated the schools and argues that by removing the materials before filing this lawsuit, SFUSD destroyed evidence crucial to Grace's defense. "The best evidence supporting this defense is an examination and testing of the materials in-place—prior to any removal." Thus, Grace urges us to find both lack of good faith on SFUSD's part and prejudice resulting to the asbestos defendant.

This argument is specious. If SFUSD reasonably suspected that its schools might be contaminated by asbestos, it had a duty to its students, employees and visitors to determine whether asbestos was present and to remove any health hazard. The discharge of this duty suggests no bad faith on the SFUSD's part. As long as there is reliable evidence establishing that Grace sold the materials to SFUSD and that the materials contained asbestos— evidence that SFUSD would have to provide in order to meet its burden of proof of causation—Grace cannot be prejudiced by removal of the contaminated materials.

As Grace's arguments are unavailing, we conclude that SFUSD is entitled to have the limitations period for this action tolled during the period that it was a member of the class of plaintiffs in the federal asbestos class action. On remand, the trial court shall toll the limitations period for the applicable time when determining whether SFUSD's action was timely filed.

## V. CONCLUSION

The trial court erred in granting summary judgment to Grace because it based its ruling on a finding that the limitations period commenced before contamination occurred. Accordingly, we find it appropriate to remand this matter to the trial court to determine whether the action was filed within the limitations period, applying the principles enunciated in our decision. If the trial court can make this determination as a matter of law, it shall rule on the motion for summary judgment. If it determines that there are factual issues

pertaining that must await determination by the trier of fact, the motion for summary judgment shall be denied.[9]

The judgment is reversed and the matter remanded to the trial court for redetermination of whether the action was filed within the limitations period, consistent with the principles expressed in this decision.

Anderson, P. J., and Poché, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 14, 1995.

---

[9]In light of this ruling, we need not address the collateral estoppel issue raised by SFUSD in its letter brief.