**Sascha HENDERSON, Plaintiff–Appellant,**

v.

**PFIZER, INC., Defendant–Appellee.**

No. 06–56568.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 13, 2008.*

Filed July 7, 2008.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Sascha Henderson, Los Angeles, CA, pro se.

Brian S. Inamine, Esq., Wright, Robinson, McCammon, Osthimer & Tatum, Los Angeles, CA, Charles Socha, Esq., Socha Perczak Setter & Anderson Denver, Denver, CO, for Defendant–Appellee.

Before: FARRIS, BEEZER, and HALL, Circuit Judges.

## MEMORANDUM **

### I.

*Pro Se* Plaintiff Sascha Henderson claims that an interuterine device ("IUD") made by a subsidiary of Defendant Pfizer, Inc. became imbedded in the lining of her uterus, causing her pain and making her infertile. In March 2002, more than 16 years after it was implanted, she had surgery to remove the IUD, and nearly three years later, filed this products liability action on January 14, 2005. After the case was transferred from the Southern District of New York, the U.S. District Court for the Central District of California granted summary judgment to Pfizer, concluding that the action was barred by California's two-year statute of limitations. The court also held that Henderson had provided no competent expert evidence that the IUD caused her injuries.

Henderson timely appeals both of these rulings. She also claims the district court (1) erred in failing to advise her of summary judgment procedures and denying her post-summary judgment motion for leave to amend her complaint, and (2) demonstrated bias against her because she appeared *pro se.* We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1332, and we affirm.

### II.

We review de novo the district court's grant of summary judgment and, viewing

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

the evidence in the light most favorable to Henderson, ask whether there are any genuine issues of material fact for trial. *Gammoh v. City of La Habra*, 395 F.3d 1114, 1122 (9th Cir.2005).

The parties agree that the relevant state of limitations is Cal. Civ. P.Code § 335.1, which allows two years to file actions for injury caused by the "wrongful act or neglect of another."[1] *See Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 27 Cal.Rptr.3d 661, 110 P.3d 914, 921 n. 3 (2005). They differ only as to when the period began to run. Henderson claims it began on June 2, 2003, when her doctor told her that the IUD made her infertile. Pfizer argues the period began at the latest in January 2002, when an ultrasound discovered the IUD and Henderson expressed concern that the device was causing her pain and may have affected her fertility. We agree with Pfizer.

Under California law, "[a] cause of action accrues when the claim is complete with all of its elements. Although this ordinarily occurs on the date of the plaintiff's injury, accrual is postponed until the plaintiff either discovers *or has reason to discover* the existence of a claim. . . ." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir.2008) (emphasis added, citations omitted). The discovery rule means that Henderson's products liability claims did not accrue until she had reason to suspect that she had been injured by a defective product. *See Fox*, 27 Cal.Rptr.3d 661, 110 P.3d at 924.

Here, the undisputed facts indicate that the claims accrued at the latest in January 2002. At that point, Henderson had been married and attempting to conceive for nearly two years without success. Headaches and pelvic pain during and after intercourse caused her to undergo an ultrasound, which revealed that an IUD implanted in the mid–1980s had become embedded in an endometrial canal on the right side of her uterus. The IUD's presence was a surprise to Henderson because she believed it had been dislodged years before, since she could no longer feel the device's "string." Before the IUD was removed, Henderson wrote to Pfizer's subsidiary, G.D. Searle & Co., asking for information concerning the device's health effects. Her letter specifically referred to the IUD's withdrawal from the market and also to a lawsuit by Australian women who claimed it had made them infertile. She also wrote: "I have recently married and my husband and I anticipate conceiving a child once its [sic] removed. I don't know if the claims of the other women in Australia are correct, but we will find out as soon as we can."

This letter demonstrates that Henderson was alerted to the possibility that her IUD had caused fertility problems and intended to further investigate. In other words, Henderson's suspicions had ripened to the point that she researched the manufacturer of the IUD, inquired about a connection between the IUD and her pelvic pain, and was concerned whether she shared the experience of other women who claimed the IUD made them infertile. When Henderson's letter is combined with the news that the IUD had to be surgically removed after being so long embedded in her uterine lining, a rational trier of fact could only find that Henderson suspected that a defective IUD had caused her to become infertile as of January 2002.

---

1. Henderson styles her claims as follows: (1) "Negligence (Consumer Product Safety Act— 15 U.S.C. § 2072)"; (2) "Misrepresentation"; (3) "Express Warranties"; (4) "Implied Warranties"; and (5) "Deceptive Trade Practices" under the FTC Act, 15 U.S.C. § 45(a). She has waived any contention that a period other than two years applies to any of these claims. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir.2003).

Henderson's contentions otherwise are unavailing. First, she essentially argues that the statute did not begin to run until she *knew* that she was infertile (knowledge she claims she acquired on June 2, 2003, when her doctor told her so). This misreads California law. True, some cases have stated that "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause will commence the limitations period." *E.g., Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923, 928 (1988) (emphasis omitted). But the California Supreme Court has since emphasized that despite such language, knowledge of the harm is not required for a claim to accrue. *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79, 89 n. 3 (1999) ("Such words do not cast doubt on the sufficiency of suspicion of the elements of a cause of action *without* knowledge."). Because of this intervening authority from the state supreme court, Henderson cannot rely on our prior decision in *New v. Armour Pharm. Co.,* 67 F.3d 716, 719 (9th Cir.1995), which read Jolly to require "knowledge of the harm." *See Rotec Indus., Inc. v. Mitsubishi Corp.,* 348 F.3d 1116, 1122 n. 3 (9th Cir.2003) (noting that a state supreme court can overrule us on a question of state law).

Moreover, though we have stated that "suspicion that one has suffered a harm does not start the statute of limitations unless one is in possession of facts that establish both the nature of the harm and its probable cause," *New,* 67 F.3d at 720, it is clear that "possession of facts" does not require actual knowledge. What matters is that the plaintiff had sufficient facts to put her on inquiry notice. *See, e.g., Platt Elec. Supply,* 522 F.3d at 1054–55; *O'Connor v. Boeing N. Am., Inc.,* 311 F.3d 1139, 1147 (9th Cir.2002); *see also Jolly,* 245 Cal.Rptr. 658, 751 P.2d at 927 (a plaintiff is "held to her actual knowledge as well as knowledge that could reasonably be dis-

covered through investigation of sources open to her"); *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.,* 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 309 (1995) (noting cause of action accrues under discovery rule if plaintiff could reasonably "have discovered the injury and cause"). Here, Henderson had notice that the IUD might have made her infertile, so she was on notice of the injury's nature and cause more than two years before she filed this lawsuit.

Finally, contrary to Henderson's suggestion, the analysis is unaffected by her claim that after her surgery on March 20, 2002 to remove the IUD, her doctor told her on a follow-up visit to "go make babies." To begin with, Henderson did not submit any evidence of her doctor's statement in her opposition to the motion for summary judgment, instead merely referring to it in her brief. And even assuming we were to excuse this omission on the ground that the district court failed to give her proper notice of summary judgment procedures, *see Fonseca v. Sysco Food Svcs. of Ariz.,* 374 F.3d 840, 846 (9th Cir. 2004), the statement would be of little help. Read in context with the same doctor's order of abstinence for two weeks following removal of the IUD, "go make babies" merely opined that Henderson could safely resume sexual intercourse. No reasonable trier of fact could interpret this as a definitive opinion that conception was actually possible, much less a statement that could reasonably *eliminate* Henderson's suspicion that the IUD made her infertile. *Cf. Enfield v. Hunt,* 162 Cal.App.3d 302, 208 Cal.Rptr. 584, 588 (1984) ("The fact that the degree of diligence required [of a patient to discover injuries] is diminished during the continuance of the [doctor-patient] relationship does not mean it is extinguished.").

Accordingly, Henderson's claims are time-barred.

## III.

Our reliance on the statute of limitations means that we need not consider the sufficiency of Henderson's expert evidence of causation. It is also immaterial that the district court denied Henderson's request to amend her complaint to refine her allegations concerning causation, or that it failed to advise her of summary judgment procedures. Neither of these decisions impacted Henderson's ability to litigate the statute of limitations question. Finally, because we will not remand for further proceedings at the district court, we need not address Henderson's request that the matter be assigned to a different district judge.

The judgment of the district court is AFFIRMED.

---

\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.