Sergio E. FONSECA, Plaintiff–
Appellant,

v.

SYSCO FOOD SERVICES OF ARI-
ZONA, INC., a Delaware for-profit
corporation, Defendant–Appellee.

No. 03–15193.

United States Court of Appeals,
Ninth Circuit.

Submitted March 10, 2004.*

Filed July 6, 2004.

* The panel unanimously finds this case suitable
for decision without oral argument. Fed.
R.App. P. 34(a)(2).

Sergio E. Fonseca, plaintiff/appellant in propria persona.

Charles L. Fine, R. Shawn Oller, Littler Mendelson, Phoenix, AZ, for defendant/appellee Sysco Food Services of Arizona, Inc.

Before: B. FLETCHER, REINHARDT, Circuit Judges, and RESTANI, Judge.**

## OPINION

BETTY B. FLETCHER, Circuit Judge:

Sergio E. Fonseca has worked for Sysco Food Services of Arizona, Inc. since 1995. He filed this pro se action alleging that Sysco discriminated against him on the basis of his Hispanic race and Guatemalan ethnicity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and 42 U.S.C. § 1981. The district court granted summary judgment for Sysco. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY[1]

Sysco operates a food wholesale distribution business. It has 500 employees in Arizona. Fonseca alleges that he was subjected to discrimination based on his race and ethnicity beginning in 1999, soon after Don Peterson was hired as the manager of the Sysco warehouse where Fonseca is employed. While Fonseca is the only Guatemalan working at the warehouse, there are other Hispanic employees, mostly Mexicans. Fonseca alleges that white workers consistently have received better treatment than Hispanics in similar circumstances.

On March 16, 1999, Fonseca learned that his mother was dying, so he left his shift early with permission from his direct supervisor. Fonseca was called back to work only four days after he left, even though the collective bargaining agreement ("CBA") allows five days of bereavement leave after the death of an immediate family member. Peterson initially terminated Fonseca for taking "unauthorized" leave, but after Fonseca filed a grievance, the suspension was reduced to a disciplinary "point" for leaving work early the day he found out his mother was dying.

Fonseca identified three other employees who received their full leave without discipline or were given extra funeral leave. One Hispanic man was allowed to begin his funeral leave when his father was dying; a white employee was granted leave for the death of a cousin in contravention of Sysco policy; and another white employee received more than five days of paid leave. Each of these employees received leave accommodations directly from Peterson; in the last case, Peterson offered, without being asked, to give the man two extra days of paid leave.

In September 2000, Fonseca was operating a forklift to move several cases of zucchini when the improperly loaded pallet tipped over, damaging one of the cases. Four supervisors saw the incident: Tom Haskell, Scott Fricke, Peterson, and Bill Zink, VP of Operations. Even though Fonseca had not loaded the pallet, Peterson called Fonseca's immediate supervisor and ordered him to give Fonseca one day disciplinary suspension. Fonseca filed a grievance and the suspension was reduced to a warning letter, which was placed in Fonseca's file.

Fonseca testified that he knows of several white employees who actually caused similar accidents or ones with more serious damage who were not disciplined. According to Fonseca's co-workers Lindsay Mark and Randy Sainz, within months of Fonseca's accident, two white employees caused

** The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

1. Because we are reviewing the grant of summary judgment, we set forth the version of the disputed facts that is most favorable to Fonseca.

much more damage to pallets of food than Fonseca did, but were not disciplined. Sysco informs all employees each time it disciplines one of them, but Mark and Sainz knew of no non-Hispanic employees who ever had been disciplined for damaging cases of food in the warehouse.

The same month as the zucchini incident, Fonseca went to tell Peterson about a problem with the new computer system. Peterson was familiar with the problem, and Fonseca spoke clearly, but Peterson pretended not to understand Fonseca. Fonseca repeated himself more than once while Peterson laughed at him and mocked his accent and repetition. Fonseca testified that he has never seen Peterson make fun of other employees' accents. The conversation with Peterson was not the only overtly negative reference to Fonseca's accent: earlier that year, Fonseca's immediate supervisor, Lee Rhodes, said to Fonseca: "Your accent is real weird." Fonseca replied, "It's probably because I'm not Mexican."

Fonseca also testified that between April 2000 and January 2001, there were ten to thirteen occasions when he was not offered overtime opportunities to which he was entitled because of his seniority.[2] Fonseca filed successful grievances for five of these occasions and eventually received lost overtime pay. Once, when Peterson had made the overtime decisions instead of another supervisor, Fonseca consciously did not challenge the loss of overtime, because he did not want to "get into trouble." On approximately six other occasions, he was passed over for overtime opportunities but did not file grievances.

Sysco presented evidence that there were two Caucasian employees who had also been bypassed for overtime opportunities. However, Fonseca testified that nobody else had to file a grievance to get paid for missed overtime opportunities. The white employees, including Paul Roggatz, told Peterson that they were passed over, and Peterson said right away that he would take care of it. In contrast, Roggatz overheard Fonseca telling Peterson about a similar missed opportunity only one week later. Instead of arranging for Fonseca to be compensated, Peterson wrongly indicated that it was Fonseca's fault that he missed the overtime. Fonseca had to file a grievance before he was compensated.

For each of his successful grievances, Fonseca alleges that he repeatedly had to request payments, and sometimes was not paid for weeks, while white employees were always paid in their next paychecks. Supervisor Haskell's testimony confirms that "employees who are successful in their grievances are usually paid by the next pay period." Peterson must approve each payment for a successful grievance. Fonseca testified that he has requested help from Peterson each time his pay was delayed but Peterson has never resolved it. On one occasion, Peterson did not deny that the check should have been given to Fonseca within 48 hours, but allegedly said: "We're not going to waste three hours today to issue one check for you."

One of Fonseca's Hispanic co-workers, Mario Mendoza, has been treated similarly. In a declaration, Mendoza stated that he was passed over for overtime, told to return early from a properly scheduled vacation, and threatened with discipline for minor damage caused when Mendoza was driving a truck. Mendoza was also

**2.** Sysco asserts that because Fonseca could only provide dates for six overtime incidents, Fonseca's testimony that this happened ten to thirteen times should be discounted. Sysco misunderstands our role in reviewing summary judgment; Federal Rule of Civil Procedure 56 does not allow us to resolve disputed factual issues.

subjected to explicit racial slurs, including once when Mendoza caught a rat in the food warehouse and his co-workers drew a sexually explicit cartoon of him as a "Mexican rat" caught in a trap. Fonseca submits that Mendoza's declaration is indicative of racial prejudice throughout the Sysco warehouse and that it supports Fonseca's allegations of discrimination.

Fonseca filed a complaint with the EEOC on November 22, 2000. He received a right to sue letter on April 24, 2001. He timely filed this action in Maricopa County Superior Court, then Sysco removed the case to federal court. In granting Sysco's summary judgment motion, the district court excluded the only evidence of disparate treatment as inadmissible hearsay, and held that the overtime errors were not adverse employment actions because Fonseca successfully resolved them through the grievance process. Fonseca appeals.

## STANDARD OF REVIEW

■ We review de novo the district court's grant of summary judgment. *Coszalter v. City of Salem,* 320 F.3d 968, 973 (9th Cir.2003). Evidentiary rulings made in the context of summary judgment motions are reviewed for abuse of discretion. *American Civil Liberties Union v. City of Las Vegas,* 333 F.3d 1092, 1097 (9th Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 1077, 157 L.Ed.2d 897 (2004).

## ANALYSIS

### I. Evidentiary Rulings and Procedural Bar

Before evaluating whether Fonseca is entitled to a trial on his employment discrimination claims under Title VII and 42 U.S.C. § 1981, we must resolve certain evidentiary and procedural issues to determine which evidence may be considered.

These issues are: (1) whether Fonseca's allegations about funeral leave are barred by the statute of limitations; (2) whether the district court properly excluded the Mendoza declaration because Fonseca did not timely disclose it; and (3) whether the district court abused its discretion in holding that all of Fonseca's evidence of disparate treatment is hearsay.

### A. Statute of Limitations

■ Fonseca alleges that he was denied full funeral leave and improperly disciplined for taking funeral leave in March 1999. Fonseca's Title VII claim regarding funeral leave is time-barred because he did not file a complaint with the EEOC within 300 days of Sysco's discriminatory act. 42 U.S.C. § 2000e–5(e)(1); *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). However, his § 1981 claim was timely under 28 U.S.C. § 1658, which provides a four-year statute of limitations for claims made under federal statutes that were enacted after December 1, 1990. *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.,* —— U.S. ——, 124 S.Ct. 1836, 1845, —— L.Ed.2d —— (2004) (applying § 1658 to § 1981 claims for wrongful termination, failure-to-transfer and hostile work environment because such claims were "made possible" by the Civil Rights Act of 1991). Fonseca's Title VII claim is time-barred insofar as he claims that he was disparately disciplined for taking funeral leave, but those allegations may be considered as part of his § 1981 claim.

### B. Mendoza Declaration

■ We review de novo the district court's decision to impose discovery sanc-

tions, because the district court failed to make factual findings regarding the sanction. *Adriana Int'l. Corp. v. Thoeren,* 913 F.2d 1406, 1407 (9th Cir.1990). In this case, the district court excluded the Mendoza declaration because Fonseca did not disclose Mendoza as a witness until one month after the supplemental disclosure deadline. We reverse the sanction because the late disclosure was both "substantially justified" and "harmless." *See* Fed.R.Civ.P. 37(c)(1).

The district court did not consider whether the late disclosure was harmless or justified, because Fonseca, a pro se plaintiff, did not file a motion to show good cause for the late disclosure. However, the district court had instructed Fonseca regarding the good cause motion in a confusing manner: "If you wish to file a motion to show good cause ... [this] new witness[ ] will *not* be permitted to be called at trial." (emphasis added). Fonseca did not file a good cause motion, but argued in response to Sysco's motion to strike the evidence that the late disclosure was substantially justified and harmless.

■ "District courts must take care to insure that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings." *Garaux v. Pulley,* 739 F.2d 437, 439 (9th Cir.1984). The district court did not give Fonseca proper notice that the Mendoza declaration would be excluded unless Fonseca filed a good cause motion. In addition, Fonseca's late disclosure was substantially justified because it was made shortly after he learned of the discrimination against Mendoza, as well as harmless, because Sysco had a copy of the Mendoza declaration months before Fonseca's disclosure. It was error to exclude the Mendoza declaration.

### C. Hearsay/Personal Knowledge

■ Because the district court held that all of Fonseca's evidence of disparate treatment was either inadmissible hearsay or beyond Fonseca's personal knowledge, without analyzing individual evidence, it is impossible to ascertain the reason for the exclusion of each piece of evidence. *Cf. Sumner v. San Diego Urban League, Inc.,* 681 F.2d 1140, 1142–43 (9th Cir.1982) (reversing district court decision on merits of employment discrimination claim because findings of fact and conclusions of law were not sufficiently specific to indicate how the district court weighed the evidence).

Nevertheless, we have reviewed all of the evidence and conclude as a matter of law that it is admissible. Much of the evidence supporting Fonseca's claim is not hearsay and is within the deponent or declarant's personal knowledge. *See* Fed. R.Evid. 801(d)(2)(D) (admission of a party-opponent is not hearsay); *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir.1990) (personal knowledge requirement in Rule 56(e) can be met by inference). Even the declarations that do contain hearsay are admissible for summary judgment purposes because they "could be presented in an admissible form at trial." *Fraser v. Goodale,* 342 F.3d 1032, 1037 (9th Cir.2003), *cert. denied sub nom. U.S. Bancorp v. Fraser,* —— U.S. ——, 124 S.Ct. 1663, 158 L.Ed.2d 358 (2004); *see also Hughes v. United States,* 953 F.2d 531, 543 (9th Cir.1992).

■ Additionally, the district court abused its discretion by excluding some evidence even though Sysco had waived any objection. *See Scharf v. United States Atty. Gen.,* 597 F.2d 1240, 1243 (9th Cir. 1979) (reversing grant of summary judgment and exclusion of evidence, because the defense did not object and the affidavit at issue "raise[d] a genuine issue of mate-

rial fact"). The district court's ruling that all of the evidence of disparate treatment was inadmissible was erroneous.

## II. Title VII Employment Discrimination

### A. Prima Facie Case

█ Fonseca may establish a prima facie case of discrimination under the *McDonnell Douglas* framework by showing that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004); *see also Raad*, 323 F.3d at 1195–96 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Sysco does not dispute that Fonseca is a member of a protected class and was adequately performing his job. Instead, it argues that Fonseca did not suffer an adverse employment action, and was not treated less favorably than those outside his protected class. Sysco's assertion that there was no disparate treatment ignores the evidence substantiating Fonseca's claim, and its adverse employment action argument is unsupported by our precedent.

### 1. Adverse Employment Action

█ We define "adverse employment action" broadly. *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir.2000); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.2000) (collecting cases). We have recognized that an adverse employment action exists where an employer's action negatively affects its employee's compensation. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir.2002) (holding that a reduction in base monthly pay was an adverse employment action even though with commission and bonuses it might have equaled the same net pay); *cf. University of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1105–06 (9th Cir.1999) (holding that receiving pay even a couple of days late can seriously affect an employee's financial situation and constitutes substantial impairment under the Contracts Clause). A warning letter or negative review also can be considered an adverse employment action. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) ("Transfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions....'").

█ The evidence, if we credit it as we must for summary judgment, shows that Fonseca was adversely and disparately treated. In less than a one year period, there were between ten and thirteen times when a Sysco supervisor called at least one white employee to work overtime that should have been assigned to Fonseca because he had seniority. Mendoza stated in a declaration that his supervisor also assigned overtime shifts to white employees with less seniority.

There is record evidence of only one occasion on which white employees were similarly passed over. On that occasion, Peterson immediately arranged for the white employees to be paid. One week later, when Fonseca was wrongly denied an overtime opportunity, he complained to Peterson, as the white employees had, but Peterson told Fonseca that the loss of overtime was Fonseca's fault, and refused compensation. Fonseca filed and won several grievances regarding unfair overtime allocation, but testified that he was never

paid for the successful grievances within 48 hours, as required by the CBA. Instead, there is evidence that Fonseca has waited months for such pay, while white employees were routinely compensated in their next paychecks.

Finally, Fonseca was disciplined for accidentally dropping a pallet of zucchini someone else had improperly loaded. Although Fonseca's suspension was reduced to a warning letter in his file through the grievance procedure, the warning letter still constitutes an adverse employment action, particularly since Sysco publicizes all discipline to all its employees. At least two white employees caused similar or worse damage to warehouse goods, but did not receive any sort of discipline; indeed, they were later promoted.

Citing *Brooks*, 229 F.3d at 930, Sysco argues that giving Fonseca's overtime shifts to white workers with less seniority was not an adverse employment action because Fonseca filed several successful grievances and was therefore compensated for the missed opportunities. In *Brooks*, we noted that a successful grievance could change the adverse nature of an employment action, such as where an employee was assigned to less favorable shifts and vacation days, but the employer accommodated her preferences after she complained. *Brooks*, 229 F.3d at 930.

*Brooks* is inapplicable for several reasons. First, while the plaintiff in *Brooks* made one complaint to remedy her adverse shifts, Fonseca filed five successful grievances. Because Fonseca was forced to file repeated grievances to remedy disparate treatment, he had to spend a significant amount of extra time simply to receive compensation to which he was clearly entitled.

Second, these grievances brought Fonseca to his supervisors' attention in a negative light. This is reflected in Peterson's response when Fonseca asked to be paid the overtime due for one of his successful grievances: "We're not going to waste three hours today to issue one check for you." Fonseca testified that on another occasion, he chose not to file a grievance at least partly because he did not want to "get in trouble" with Peterson.

 Finally, Fonseca did not file grievances for all of the times he was skipped for overtime. There were up to six occasions when Fonseca was deterred from filing any grievance, which means that when the amount of lost overtime was relatively minor, or Fonseca felt that he would "get in trouble" for filing a grievance, he was simply denied compensation. We hold that it is an adverse employment action when an employer knows its employees are entitled to certain opportunities, but forces only employees of a certain race to use the grievance procedure to obtain them. The fact of successfully grieving an adverse employment action does not preclude an employee from pursuing a claim of discrimination.

### 2. Evidence of Inference of Disparate Treatment

The evidence we have already described supports an inference of disparate treatment. Additionally, there is evidence in the record of "ethnically biased remarks from a person in … a position of authority," which is "sufficient to allege the connection necessary … to survive summary judgment." *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1180 (9th Cir.1998).

 In September 2000, Peterson pretended not to understand and mocked Fonseca's accent.[3] This derision is partic-

3. Title VII prohibits an employer from treat-

ing an employee disparately because he has

ularly relevant because it was within a month of two incidents of disparate treatment: on September 22, 2000, Peterson saw the zucchini accident and suspended Fonseca, and on October 8, 2000, Peterson passed over Fonseca for an overtime opportunity in favor of a white employee, then refused to pay Fonseca even though he had immediately arranged to compensate the two white employees who came to him with the exact same complaint one week earlier.

Rhodes' comment about Fonseca's accent is similarly related to the allegedly discriminatory treatment of Fonseca. Rhodes disparaged Fonseca's accent in June or July of 2000. Earlier that year, on April 20, 2000, Rhodes was most likely the supervisor who skipped Fonseca on the seniority list and gave overtime to a white employee instead. Rhodes skipped Fonseca again on October 11, 2000. The inference in favor of Fonseca is that Rhodes' discriminatory comment was related to his decisions to deny Fonseca overtime opportunities.

Fonseca repeatedly was denied overtime opportunities and timely compensation in violation of the CBA while whites were not, and he was disciplined for an accident while whites who caused similar accidents were not. Taking into consideration the evidence of animus and drawing inferences in Fonseca's favor, we hold that this is more than sufficient to establish a prima facie case. *See Cordova v. State Farm Ins. Cos.,* 124 F.3d 1145, 1148 (9th Cir. 1997) ("The requisite degree of proof necessary to establish a prima facie case for Title VII ... on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.") (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994)).

## B. Legitimate Employment Reasons and Pretext

■ Fonseca has established a prima facie case for summary judgment purposes, and, therefore benefits from a presumption of unlawful discrimination, which Sysco can rebut only if it offers a legitimate, nondiscriminatory reason for the adverse employment action. *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir.2002). If Sysco provides a legitimate reason for disciplining or refusing to pay Fonseca, the burden shifts to Fonseca to show that the reason given is a pretext. *See Pottenger v. Potlatch Corp.,* 329 F.3d 740, 746 (9th Cir. 2003).

Sysco offers only one reason for one instance of disparate treatment, besides its conclusory and irrelevant assertion that any disparate treatment was "inadvertent." Regarding the zucchini incident, Sysco argues that Bill Zink, who saw Fonseca's zucchini accident, determined that Fonseca intentionally damaged the goods, and therefore discipline was appropriate.

■ "[A] plaintiff can prove pretext either '(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.'" *Lyons,* 307 F.3d at 1113 (9th Cir.2002) (quoting *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220–22 (9th Cir. 1998)).

an accent, unless the job requires a certain accent. *Raad v. Fairbanks North Star Borough Sch. Dist.,* 323 F.3d 1185, 1195 (9th Cir.2003) ("Accent and national origin are obviously inextricably intertwined in many cases.") (quoting *Fragante v. City & County of Honolulu,* 888 F.2d 591, 596 (9th Cir.1989)).

Fonseca argues that the zucchini damage demonstrably was not his fault, and further that it would have been ridiculous for Zink or Peterson to conclude that Fonseca would intentionally damage goods in front of four supervisors. This is supported by Fonseca's testimony that no one conducted any investigation into the incident, and that Fonseca successfully grieved his suspension. In addition, while Zink's declaration states that he recommended discipline, Peterson was the person who ordered Fonseca's suspension. Given the evidence of Peterson's discriminatory animus, Fonseca has shown sufficient evidence of pretext to rebut the one explanation that Sysco produced. *See Chuang v. Univ. of California Davis, Bd. of Trs.,* 225 F.3d 1115, 1127 (9th Cir.2000) ("[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.").

There is a genuine issue of material fact as to whether Sysco's adverse employment actions against Fonseca constituted disparate treatment on the basis of race or ethnicity. We reverse the district court's grant of summary judgment.

## III. Employment Discrimination under § 1981

Under 42 U.S.C. § 1981, discrimination based on "ancestry or ethnic characteristics" is prohibited. *St. Francis Coll. v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Although national origin discrimination is not within the ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups. *See Manatt v. Bank of Am., NA,* 339 F.3d 792, 798 (9th Cir.2003). Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case. *Id.* at 797–98. Both require proof of discriminatory treatment and the same set of facts can give rise to both claims. *Lowe v. City of Monrovia,* 775 F.2d 998 (9th Cir.1985). For the reasons stated above, there is a genuine issue of material fact as to whether Sysco employees discriminated against Fonseca because he is Hispanic.[4] We therefore reverse the grant of summary judgment on Fonseca's § 1981 claim.

## CONCLUSION

We affirm the grant of summary judgment as to Fonseca's Title VII claim regarding funeral leave because it is barred by the statute of limitations. We reverse the grant of summary judgment on all other claims. The district court abused its discretion when it excluded all of Fonseca's evidence, and there are genuine issues of material fact that preclude summary judgment on his disparate treatment claims.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

4. Since Fonseca's § 1981 claim concerning his funeral leave in March 2001 is not time-barred, that evidence of disparate treatment buttresses the other evidence of disparate treatment that defeats summary judgment against him.