**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000785
28-FEB-2022
09:34 AM
Dkt. 65 MO**

NO. CAAP-16-0000785

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


JODI H. FUKUMOTO, Plaintiff-Appellant,
v.
STATE OF HAWAII; MARK A. FRIDOVICH, in his official capacity as
Hawaii State Hospital Administrator, Defendants-Appellees
and
JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-10,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-3066)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Leonard and McCullen, JJ.)

Plaintiff-Appellant Jodi H. Fukumoto (**Fukumoto**) appeals from the Judgment entered on October 6, 2016, by the Circuit Court of the First Circuit (**Circuit Court**), which entered judgment in favor of Defendants-Appellees State of Hawaiʻi, Department of Health, and Mark A. Fridovich, in his official capacity as Hawaiʻi State Hospital Administrator (collectively, the **State**) on all claims asserted by Fukumoto in her Complaint filed on December 5, 2012.[1]  In this appeal, Fukumoto challenges the Circuit Court's grant of summary judgment for the State, set forth in the "Order Granting [the State's] Motion for Summary Judgment," also filed on October 6, 2016.

---

[1]  The Honorable Edwin C. Nacino presided.

During the relevant period in this case, Fukumoto was employed by Hawaiʻi State Hospital (**HSH**) as a registered nurse during the evening shift in the State Operated Specialized Residential Program (**SOSRP**).[2]  Fukumoto's Complaint alleges that she reported employee infractions and misconduct to Martin E. Matthews (**Matthews**), her direct supervisor, and the State retaliated against her for these reports in violation of the Hawaiʻi Whistleblowers' Protection Act (**HWPA**), under Part V, Chapter 378 of the Hawaii Revised Statutes (**HRS**).  After the discovery cutoff, the State sought summary judgment, which the Circuit Court granted and dismissed Fukumoto's HWPA claim.

On appeal, Fukumoto contends the Circuit Court erred in granting summary judgment because there were genuine issues of material fact as to whether: (1) Fukumoto reported violations of State law; (2) the State retaliated against Fukumoto as a result; (3) there was a nexus between Fukumoto's reporting and the retaliation; and (4) Fukumoto incurred damages.[3]

We hold that, although Fukumoto's reports to her employer did not explicitly assert or cite a law being violated, her HWPA claim was not barred in this case.  We further conclude

---

[2]  The SOSRP houses patients/clients discharged from the HSH, including those who have been found "not guilty by reason of insanity" for alleged crimes.

[3]  The State contends Fukumoto's points of error should be disregarded and her arguments deemed waived because Fukumoto fails to cite to the record. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(ii) ("Each point shall state: . . . where in the record the alleged error occurred[.]").  In addition, the State contends the opening brief contains bare allegations and unsupported assertions, which primarily rely on Fukumoto's self-serving declaration to establish a triable issue of fact.  While noncompliance with HRAP Rule 28(b)(4) can alone be sufficient to affirm the lower court's judgment, we endeavor to afford "litigants the opportunity to have their cases heard on the merits, where possible." Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) (citation and internal quotation marks omitted). Therefore, to the extent we can discern Fukumoto's assertions of error and arguments, we will address them.  Further, with regard to Fukumoto's declaration, the Hawaiʻi Supreme Court has expressed that "a party's self-serving statements that otherwise comply with [Hawaiʻi Rules of Civil Procedure (**HRCP**)] Rule 56(e) can be utilized to defeat summary judgment[,]" and such affidavits do not need to be corroborated to be a qualifying affidavit under HRCP Rule 56. Nozawa v. Operating Eng'rs. Local Union No. 3, 142 Hawaiʻi 331, 339, 418 P.3d 1187, 1195 (2018) (citations omitted).

that, viewing the evidence in the light most favorable to
Fukumoto, which we must, the State failed to carry its burden to
establish that it was entitled to summary judgment.  We thus
vacate the Judgment and remand the case for further proceedings.

**I.   Standard of Review**

On appeal, we review a circuit court's grant of summary
judgment *de novo* using the same standard applied by the circuit
court.  Nozawa, 142 Hawaiʻi at 338, 418 P.3d at 1194 (citation
omitted).

> Summary judgment is appropriate if the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to
> a judgment as a matter of law.  A fact is material if
> proof of that fact would have the effect of
> establishing or refuting one of the essential elements
> of a cause of action or defense asserted by the
> parties.
>
> The burden is on the moving party to establish that
> summary judgment is proper.  This burden always
> remains with the moving party and requires the moving
> party to convince the court that no genuine issue of
> material fact exists and that the moving party is
> entitled to summary judgment as a matter of law.
>
> Once a summary judgment movant has satisfied its
> initial burden of producing support for its claim that
> there is no genuine issue of material fact, the party
> opposing summary judgment must demonstrate specific
> facts, as opposed to general allegations, that present
> a genuine issue worthy of trial.  The evidence must be
> viewed in the light most favorable to the non-moving
> party.

Id. at 342, 418 P.3d at 1198 (format altered) (brackets,
citations, and internal quotation marks omitted).

In a case like this, where the defendant files a
summary judgment motion and the plaintiff has the ultimate burden
of proof at trial, the following applies:

> [W]here the non-movant bears the burden of proof at trial, a
> movant may demonstrate that there is no genuine issue of
> material fact by either: (1) presenting evidence negating an
> element of the non-movant's claim, or (2) demonstrating that
> the non-movant will be unable to carry his or her burden of
> proof at trial.

Ralston v. Yim, 129 Hawaiʻi 46, 57, 292 P.3d 1276, 1287 (2013).

## II.  Discussion

### A.    Standards for an HWPA Claim

The HWPA provides, in relevant part:

> **Discharge of, threats to, or discrimination against employee for reporting violations of law.**  An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
>> (1)    The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>>
>>> (A)    A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States;
>>
>> . . .
>>
>> unless the employee knows that the report is false [.]

HRS § 378-62 (2015).

This court has previously expressed the following regarding HWPA claims:

> In order to prevail on an HWPA claim, an employee must prove the following: (1) the employee engaged in protected conduct under the HWPA, (2) the employer took an adverse employment action against the employee, and (3) a causal connection exists between the employee's protected conduct and the employer's adverse action (i.e., the employer's action was taken because the employee engaged in protected conduct; the employee has the burden of showing that the protected conduct was a "substantial or motivating factor" in the employer's decision to take the employment action). See Crosby v. [] State Dep't of Budget & Fin., 76 Hawaiʻi 332, 341–42, 876 P.2d 1300, 1309–10 (1994); see also Taqupa v. VIPdesk, Inc., 125 F. Supp. 3d 1108, 1119 (D. Haw. 2015).
>
> The employer carries the burden of negating causation only after the employee first demonstrates a causal connection. Crosby, 76 Hawaiʻi at 342, 876 P.2d at 1310. Therefore, "once the employee shows that the employer's disapproval of his or her protected activity played a role in the employer's action against him or her, the employer can defend affirmatively by showing that the termination would have occurred regardless of the protected activity." Id. (citation, internal quotation marks and brackets, in original omitted; emphasis added) (applying federal case law on employees' rights under the National Labor Relations Act to the HWPA). "An aggrieved employee always retains the ultimate burden of proof in a retaliatory discharge case" and, therefore, the employer's burden is a burden of production, not a burden of persuasion. Id.

4

> "If the employer rebuts the prima facie case, the burden reverts
> to the employee to demonstrate that the employer's proffered
> reasons were 'pretextual.'" Adams [v. CDM Media USA, Inc.], 135
> Hawaiʻi [1,] 14, 346 P.3d [70,] 83 [(2015)] (quoting Shoppe [v.
> Gucci Am., Inc.], 94 Haw. [368,] 379, 14 P.3d [1049,] 1060
> [(2000)]) (describing the burden-shifting analysis that Hawaiʻi
> court's use when analyzing a claim of age discrimination that
> relies on circumstantial evidence); Schefke v. Reliable Collection
> Agency, Ltd., 96 Hawaiʻi 408, 425, 32 P.3d 52, 69 (2001) ("If the
> employer articulates such a reason for terminating the employee,
> the employee bears the ultimate burden of demonstrating that the
> reason was merely a pretext for a discriminatory motive."); see
> also Crosby, 76 Hawaiʻi at 342, 876 P.2d at 1310 (concluding that
> the HWPA follows the same burden of proof used in "traditional
> labor management relations discharge cases").

Medina v. FCH Enters., Inc., No. CAAP-14-0001316, 2016 WL
6748063, at *3-4 (Haw. App. Nov. 15, 2016) (mem.) (emphasis and
brackets omitted).  The HWPA is a remedial statute and should be
construed liberally to accomplish the purpose for which it was
enacted. Crosby, 76 Hawaiʻi at 341-42, 876 P.2d at 1309-10
(citations omitted).

"Although Crosby reviewed a ruling entered after a
jury-waived trial, this court and the United States District
Court for the District of Hawaiʻi have applied the HWPA burden-
shifting analysis at summary judgment." Dobbs v. Cty. of Maui,
No. CAAP-16-0000577, 2019 WL 762407, at *2 (Haw. App. Feb. 20,
2019), as corrected (Mar. 13, 2019) (SDO) (citing Medina, 2016 WL
6748063, at *4; Taguchi v. State, Dep't of Health, No.
CAAP-10-0000129, 2012 WL 5676833, at *1-2 (Haw. App. Nov. 15,
2012) (SDO); Mussack v. State, No. 28774, 2011 WL 6144904, at *3
(Haw. App. Dec. 7, 2011) (SDO); Taqupa, 125 F. Supp. 3d at 1119;
Griffin v. JTSI, Inc., 654 F. Supp. 2d 1122, 1131-32 (D. Haw.
2008)).

Ultimately, given that we are reviewing the Circuit
Court's grant of summary judgment in favor of the State, we
consider whether the State demonstrated that there is no genuine
issue of material fact by either: (1) presenting evidence
negating an element of non-movant Fukumoto's claim, or (2)
demonstrating that non-movant Fukumoto will be unable to carry

her burden of proof at trial.  <u>See</u> <u>Ralston</u>, 129 Hawaiʻi at 57, 292 P.3d at 1287.

    **B.**    **Fukumoto's Complaint**

In her Complaint, Fukumoto alleged in relevant part:

7.    Plaintiff commenced work for Defendants on or about May 9, 2011. [Matthews], Mental Health Supervisor II, is Plaintiff's direct supervisor at all times relevant to the complaints set forth in this complaint.

8.    Prior to reporting the matters set forth below, Plaintiff had met or exceeded job qualifications for Registered Nurse III.

9.    <u>On or about between January of 2012 and March of 2012, Plaintiff, in letters and in Employee Incident Reports ("EIRs"), reported to Matthews (and HSH as well) the continuous employee infractions occurring at SOSRP on the evening shift</u>.  Matthews decided to dismiss Plaintiffs [sic] concerns for patient safety rather than address the issues. On March 13, 2012, Matthews met with Fukumoto in his office and told her that there were numerous employee complaints against her as charge nurse during the evening shift, but not to worry.  Then on March 28, 2012, Matthews, conducted an improper appraisal and <u>imposed improper disciplinary action</u>.

10.    Matthews stated on or about March 30, 2012, "She's (Plaintiff) got to go," to RN Thomas Martin.  Martin reported the comments to appropriate staff.  Upon information and belief, Matthews used the fact that Plaintiff and Martin were socially involved as a pretext to justify his comments.  The real reasons for the inappropriate comments were in retaliation for Plaintiff reporting the foregoing issues of patient safety.

11.    Rather than support Plaintiff's efforts to supervise evening staff and run a safe unit and improve client care - Matthews buckled under staff dissent. Matthews instead attacked Plaintiff's communication and supervisory skills and <u>reduced her charge nurse hours</u> in order to quell staff retaliation.  In doing so Matthews condoned the unfavorable actions of staff; in <u>reassigning Plaintiff</u>, Matthews allowed these unfavorable actions to escalate.  For example, Matthews, immediately and without investigation, accepted and supported Ms. LPN Elizabeth Rubino's very questionable account of the evening of 6/7/2012.  His email indicated his gross bias in that he would restate such a defaming claim: "Jodi Fukumoto was raging," without any investigation.  His very action proved that he had already made a determination without even hearing from Plaintiff first.  Matthews did not call Plaintiff to assess her state of mind.  Matthews did not ask Plaintiff to leave work.  He did not call security, the Nursing Office, or the police.  On the evening of 6/7/2012 as charge nurse, Plaintiff had counseled three employees for not being attentive to patient safety during their assigned shifts; these very same three employees complained about her as a result and Matthews took their word over hers without hearing both sides of the situation first.

12.    Defendants turned a blind eye to unsafe workplace practices that put employees and patients at risk; Defendants singled Plaintiff out and made an example of her for reporting unsafe workplace practices after first falsely accusing her of being incompetent, untenable and disruptive.

13.    Defendant retaliated against Plaintiff in violation of HRS 378-62, et al. [HWPA] for reporting unsafe workplace practices[.]

(Emphases added.)

Fukumoto's Complaint further detailed alleged actions taken against her in retaliation for her reporting unsafe workplace practices, including: (1) improper/unofficial supervisory appraisal and criticism of communication and supervisory skills, resulting in a limit on supervisory duties, disciplinary action, and reduction of hours and wages; (2) reassignment from out-patient to in-patient care and night shift to day shift, resulting in hardship to Fukumoto as she was "forc[ed]" to take leave to receive "proper" training for in-patient care duties, and emotional distress and out-of-pocket damages as Fukumoto is her mother's caregiver during the day and needed to make alternative arrangements for care once reassigned to day shift; (3) improperly delaying or denying requests for employee leave; (4) false incident reports and harassment against Fukumoto; and (5) improper tracking, calculation, and distribution of leave and earnings.

C.    **The State did not meet its burden to show there was no genuine issue of material fact**

1.    **There are genuine issues of material fact whether Fukumoto engaged in protected conduct under the HWPA.**

As noted, in paragraph 9 of her Complaint, Fukumoto alleged:

On or about between January of 2012 and March of 2012, Plaintiff, in letters and in Employee Incident Reports ("EIRs"), reported to Matthews (and HSH as well) the continuous employee infractions occurring at SOSRP on the evening shift.

(Emphasis added.)  The Circuit Court did not articulate its reason for granting summary judgment.  The State contends that

7

Fukumoto's reports during the relevant time frame did not constitute protected activity under the HWPA, which requires proof that the employee reported or was about to report a violation of "[a] law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States[.]"  HRS § 378-62(1)(A).

The State contends that, given the specified allegations in the Complaint, the following reports made by Fukumoto should be considered for purposes of this appeal: (1) a February 14, 2012 EIR about Paramedical Assistant Seth Soriano (**PMA Soriano**) using his cell phone throughout his evening shift and refusing a request not to use his cell phone during his shift; (2) a March 13, 2012 email and report to Matthews requesting that all evening staff sign in and out during their breaks and specifying incidents and issues prompting the request; and (3) an EIR purportedly submitted on March 13, 2012, but dated April 19, 2012, in which Fukumoto described three incidents involving Licensed Practical Nurse Elizabeth Rubino (**LPN Rubino**) on March 9, 2012, March 11, 2012, and March 26, 2012.[4]

In opposition to the State's motion for summary judgment, Fukumoto submitted her declaration attesting that she submitted more than three written reports to Matthews, not all of which were assigned EIR numbers and some that occurred outside of the time frame asserted in the Complaint.  Further, in responding to an interrogatory request seeking the facts that support her allegations in paragraph 9 of her Complaint, Fukumoto points to emails, EIRs, and letters she purports to have submitted both within and beyond the time frame asserted in paragraph 9 of her

---

[4]  The State concedes that, given evidence in the record that Fukumoto submitted an EIR dated March 13, 2012, to Matthews about the first two incidents in the April 19, 2012 EIR, but that Matthews told her to hold off on submitting that earlier report, those two incidents should be considered for purposes of this appeal.  The State contends, however, that the third incident in the April 19, 2012 EIR should not be considered because it was reported outside the time frame alleged in the Complaint.  As discussed *infra*, we agree with the State's position in this regard.

Complaint, as well as incidents she allegedly "verbalized" to Matthews.

Given the state of the record, and that Fukumoto's Complaint was not amended, we deem it appropriate to limit our review to the EIRs and emails/reports provided by Fukumoto to Matthews during the time frame asserted in the Complaint.  We thus consider the following reports by Fukumoto, which are identified in Fukumoto's declaration and/or in her response to interrogatories: (1) the EIR dated February 14, 2012, regarding PMA Soriano using his cell phone throughout an evening shift and refusing Fukumoto's request to leave his phone in the office during his shift; (2) the email and report dated March 13, 2012, to Matthews, requesting that all evening staff sign in and sign out during their breaks, which also specified incidents and issues that prompted Fukumoto's request;[5] and (3) the EIR dated March 13, 2012, that Fukumoto attests she submitted to Matthews at a meeting on the same day regarding two incidents, on March 9, 2012 and March 11, 2012, involving insubordination by LPN Rubino and her refusal and opposition to orders by Fukumoto to sign out for breaks,[6] which Matthews purportedly reviewed but then told Fukumoto to "[h]old off on submitting."

---

[5]  This report noted an incident where Fukumoto did not recall a staff member telling her he was going on break the night a client was placed under supervision and eloped, noting that if the staff member had reported his break, coverage would have been assigned to his cottage during his break.  The report also noted a "standing issue" of staff congregating in one cottage, leaving another cottage unsupervised, and that a sign-out log for breaks could make staff more conscious about the length of their breaks.  Fukumoto also noted in this report that there is no management present during evening shifts and the charge nurse is responsible for the safety of the unit and she "just want[s] to insure that safety."

[6]  The incidents documented in the March 13, 2012 EIR include that LPN Rubino repeatedly opposed signing a "staff break sign-out log" saying, *inter alia*, that there was no written policy and stating she needed to hear it from Matthews, such that Fukumoto was concerned LPN Rubino may not comply with orders in crisis situations unless orders are first verified by management or written in policy.  Fukumoto's report also references past incidents where: LPN Rubino repeatedly questioned Fukumoto's decision to have staff call 911 during a physical altercation between two clients; LPN Rubino interrupted Fukumoto's discussion with PMA Soriano on February 14, 2012, when Fukumoto was asking PMA Soriano to leave his cell phone in the office while on-duty; and LPN Rubino's grievances against Fukumoto, which Fukumoto asserted was being used to fuel dissension with Fukumoto and which "jeopardizes the safety of the milieu."

In considering the relevant reports, we address Fukumoto's contention that she was raising concerns about unsafe workplace practices at SOSRP.  We note Fukumoto's declaration attests that:

> SOSRP residents/clients are discharged HSH patients, who generally have been diagnosed with mental illnesses and have legal encumbrances. Primarily these patients have been found "not guilty by reason of insanity" for crimes committed. Generally HSH patients are court-ordered specifically to the SOSRP on conditional release (CR) under Hawaii Revised Statutes 704-411 or 704-406. Patients with a prominent history of violence (murder, attempted murder, 1st degree assault, rape), as well as those hard to place in the community for a wide range of reasons are generally first discharged from HSH to SOSRP. SOSRP is responsible for the direct supervision of its clients who reside on unit 24 hours a day, seven days a week.

(Emphasis omitted.)  Under HRS § 704-406(1) (2014), titled "Effect of finding of unfitness to proceed[,]" defendants found unfit to proceed in court are committed "to the custody of the director of health to be placed in an appropriate institution for detention, care, and treatment[.]"  Likewise, under 704-411(1)(a) (2014), titled "Legal effect of acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibility; commitment; conditional release; discharge; procedure for separate post-acquittal hearing[,]" defendants are "committed to the custody of the director of health to be placed in an appropriate institution for custody, care, and treatment" under specified circumstances.

The State argues that the relevant reports by Fukumoto do not allege a violation of a law, do not reference any law, and that alleging a violation of a policy is not sufficient for asserting an HWPA claim.

Fukumoto contends, however, that she was making reports regarding violations or suspected violations of HRS §§ 704-406 and 704-411 because her reports dealt with staff at SOSRP failing to be attentive to patients, including the improper use of cell phones and improper monitoring of patients.

Fukumoto cites a variety of case law outside this jurisdiction to support her position that she reported a

10

violation or suspected violation of law, even though she did not cite a particular law being violated in her reports to Matthews. Of note, Fukumoto cites <u>Moore v. California Institute of Technology Jet Propulsion Laboratory</u>, 275 F.3d 838 (9th Cir. 2002), which dealt with a claim by a plaintiff against his former employer under, *inter alia*, the False Claim Act, 31 U.S.C. § 3730(h) (2006), asserting retaliation after he reported suspected fraud by the employer.  275 F.3d at 840-41.  As explained by the Ninth Circuit Court of Appeals:

> The False Claims Act protects "whistle blowers" from retaliation by their employers. Thus, the False Claims Act makes it illegal for an employer to "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h).

<u>Id.</u> at 845 (brackets and ellipses omitted).  The first element that an employee must prove for a 31 U.S.C. § 3730(h) retaliation claim is "that the employee engaged in activity protected under the statute[.]"  <u>Id.</u>  As to this first element, the Ninth Circuit stated:

> We have held that to come under the protection of the anti-retaliation provision of the False Claims Act, "<u>[s]pecific awareness of the FCA is not required</u>," but "the plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action."  [United States ex rel. ]Hopper[ v. Anton], 91 F.3d [1261,] 1269 [(9th Cir. 1996)].  We reaffirm this standard today and clarify that an employee engages in protected activity where <u>(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government</u>.

<u>Id.</u> at 845 (emphases added); <u>see also</u> <u>Wilkins v. St. Louis Hous. Auth.</u>, 314 F.3d 927, 933 (8th Cir. 2002) (adopting the <u>Moore</u> test in determining whether an employee engaged in protected activity under the federal False Claims Act).

In reviewing a district court's grant of summary judgment for the defendant employer, the <u>Moore</u> court held there were genuine issues of material fact whether the plaintiff had engaged in protected activity in reporting suspected fraud by his

11

employer.  Id. at 845-46.  Considering the evidence in the case, the Moore court concluded that "under the first prong of our test, a reasonable jury could conclude that [plaintiff] believed in good faith that [employer] was attempting to defraud the government in violation of the False Claims Act."  Id. at 846.

Fukumoto also cites Melchi v. Burns International Security Services Inc., 597 F. Supp. 575 (E.D. Mich. 1984), addressing Michigan's whistleblower's protection act,[7] which is materially similar to HRS § 378-62.  597 F. Supp. at 583-84.  In Melchi, the court stated:

> In applying the Act as interpreted, the Court must determine if a Whistleblowing plaintiff held a subjective good faith belief that his employer had violated the law. In view of the pervasive regulation of the nuclear power industry by a host of state and federal agencies the Court feels that it is eminently reasonable to believe that the destruction and/or falsification of reports and records by the security force would constitute a violation of a law, rule or regulation.  Thus, in the present case the Court has found that plaintiff did hold a subjective belief that the destruction or falsification of security records and reports is a violation of a state or federal law, regulation or rule. (Finding of Fact number 23)  Accordingly, the Court believes plaintiff has established the first element of his prima facie case.

Id. at 583-84 (emphases added).

The State asserts the HWPA is intended to protect employees who blow the whistle for the public good, citing Norris v. Hawaiian Airlines, Inc., 74 Haw. 235, 842 P.2d 634 (1992).  In Norris, although not addressing the issue at hand, the Hawaiʻi Supreme Court expressed:

> Our review of the legislative history of the HWPA reveals that the legislature intended to safeguard the general

---

[7]  The whistleblower provision cited in Melchi states, in relevant part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally, or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body[.]

Michigan Compiled Laws § 15.362 (1984).

> public by giving certain protections to individual employees
> who "blow the whistle" **for the public good**.  See Senate
> Stand. Comm. Rep. No. 1127, 1987 Senate Journal, at 1391–92
> ("providing protection to government employees and citizens
> who are willing to 'blow the whistle' when they are aware of
> ethical or other violations of law will help the State
> maintain high standards of ethical conduct."); see also Hse.
> Stand. Comm. Rep. No. 25, 1987 House Journal, at 1090.

74 Haw. at 261, 842 P.2d at 646 (emphases added).

First, we note there is no requirement articulated in HRS § 378-62 or its legislative history that the report by an employee must cite to the particular law, rule, ordinance, or regulation being violated or suspected of being violated.  See HRS § 378-62; S. Stand. Comm. Rep. No. 1127, in 1987 Senate Journal, at 1391-92 ("The purpose of this [whistleblower protection] bill is to provide protection to employees in the private and public sectors who report suspected violations of law from any form of retaliation by their employers." (emphasis added)).  Indeed, that a report of a "suspected violation" is protected conduct under HRS § 378-62 suggests that an employee need not specify the particular law, rule, ordinance or regulation at issue.  Further, as noted in Crosby, the HWPA is a remedial statute that should be construed liberally to accomplish its purpose, which is to protect employees who report suspected violations of law from any form of retaliation.  Crosby, 76 Hawaiʻi at 341-42, 876 P.2d at 1309-10.  We thus conclude the absence of a law, rule, ordinance, or regulation being cited in Fukumoto's reports to Matthews does not bar her HWPA claim.  See also Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365, 1377 (N.D. Ga. 2004) (holding under federal Sarbanes-Oxley Act of 2002 there was a genuine issue of material fact whether plaintiff engaged in protected activity and stating, "if Congress had intended to limit the protection of Sarbanes-Oxley . . . to have required complainants to specifically identify the code section that they believe was being violated, it could have done so.").

Second, we are persuaded that the "reasonable good faith" test set forth in Moore is appropriate for purposes of addressing the first element of a claim under the HWPA.  That is,

13

an employee engages in protected activity under HRS § 378-62 when, in making (or in about to make) a report: (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing a violation of a law, rule, ordinance, or regulation adopted pursuant to law of this State, a political subdivision of this State, or the United States.  See Moore, 275 F.3d at 845.  This test is consistent with Norris in that it provides protection under HRS § 378-62 to employees who "'blow the whistle' for the public good."  74 Haw. at 261, 842 P.2d at 646.

In this case, viewing the evidence in the light most favorable to Fukumoto, there is a genuine issue of material fact as to whether Fukumoto had a reasonable good faith belief in making the relevant EIRs and emails/reports to Matthews that her employer was possibly committing violations or suspected violations of HRS §§ 704-406(1) and 704-411(1)(a), which require the State to provide detention or custody and "care[] and treatment" to SOSRP clients.  In other words, given the evidence, a jury could conclude that Fukumoto, in reasonable good faith, believed the issues and incidents she reported concerned the proper detention, custody, care and treatment of SOSRP clients and thus involved violations or suspected violations of the State's statutory responsibility under applicable law.

We conclude the State did not meet its initial burden on this issue to show there was no genuine issue of material fact, by either presenting evidence negating this element of Fukumoto's HWPA claim or demonstrating that Fukumoto would be unable to carry her burden of proof at trial.  Ralston, 129 Hawaiʻi at 57, 292 P.3d at 1287.

> 2. **There is a genuine issue of material fact as to whether Fukumoto suffered an adverse employment action because she engaged in protected conduct.**

The State asserts Fukumoto was not subjected to an adverse employment action because she was never terminated or

demoted, and did not have her wages or benefits significantly reduced.  Based on the record before us, Fukumoto has been employed at SOSRP as a registered nurse, starting in 2011 in a non-civil service position, and from 2013 in a civil service capacity.  Furthermore, since Fukumoto has been employed at SOSRP, her performance has been rated as either "meets expectations" or "exceeds expectations."

In Crosby, the Hawaiʻi Supreme Court acknowledged that the terms "'compensation, terms, conditions, location, or privileges of employment' are not defined in HRS chapter 378." 76 Hawaiʻi at 341, 876 P.2d at 1309.  The Hawaiʻi Supreme Court also acknowledged that a "broad reading of the term 'condition' in the HWPA is in accord with the legislative intent[,]" which the court noted was to provide protection to employees who report suspected violations of law from "any form of retaliation by their employers." Id. (citing S. Stand. Comm. Rep. No. 1127, in 1987 Senate Journal, at 1391-92) (emphasis added).  Further, in Black v. Correa, Civil No. 07-00299 DAE-LEK, 2008 WL 3845230 (D. Haw. Aug. 18, 2008), the U.S. District Court for the District of Hawaiʻi applied the Ninth Circuit's test for adverse employment actions in Title VII cases to an HWPA claim, stating that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." Id. at *11 (internal quotation marks omitted) (quoting Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000)).[8]

Fukumoto asserts that within days of her email to Matthews on March 13, 2012, the State discriminated and retaliated against her.  For instance, in her declaration,

---

[8]  In Crosby, the Hawaiʻi Supreme Court addressed the burden of proof in establishing a causal connection between alleged retaliation and the plaintiff's whistle blowing, stating "[t]he HWPA's legislative history indicates that the legislature intended that the required burden of proof be similar to that utilized in traditional labor management relations discharge cases[,]" and referencing the burden under the National Labor Relations Act. 76 Hawaiʻi at 342, 876 P.2d at 1310.  See also Furukawa v. Honolulu Zoological Soc'y., 85 Hawaiʻi 7, 13, 936 P.2d 643, 649 (1997) (looking to federal court decisions on Title VII employment discrimination cases for guidance in employment discrimination case under Hawaiʻi Statute).

Fukumoto attests she was required to attend "Staff Development for skill building" training to address "effective communication" based on an employee performance appraisal by Matthews on March 28, 2012, shortly after she submitted her written reports. Fukumoto presented evidence that while the training was to be for the unit or shift as a whole, Fukumoto was singled out as a mandatory participant.  Moreover, Fukumoto's supervisory duties were "reduced pending completion of training and at [Matthews's] discretion."  An email from Matthews to HSH Personnel Management Specialist Karen Hara (**Hara**) indicates that Fukumoto refused to attend the training because "the Union said [she] didn't have to go" and Fukumoto emailed her union agent indicating Matthews stated he would abide by whatever the union and Hara decided. Nonetheless, the record indicates that Matthews issued a written reprimand on June 5, 2012, for Fukumoto's failure to attend the training.

Fukumoto attests that on June 8, 2012, Matthews reassigned her to the HSH nursing units.  Fukumoto asserted to her union that "she is not trained to work on the units" and she attested that her "safety was not addressed" prior to the reassignment.  Despite evidence of emails between, *inter alia*, Matthews, Hara, and HSH Associate Administrator William Elliott indicating that Fukumoto was current on all mandatory training for either SOSRP or the nursing unit, there is evidence that Hara was "concerned about the liability should anything happen to [Fukumoto] while she's re-assigned."  Fukumoto also asserts that records of her having taken mandatory training were false because she was on leave approved by Matthews from June 2012 to October 2012.  Moreover, the reassignment to the day shift purportedly caused Fukumoto, who was her mother's caregiver during the day, to take Family Medical Leave to care for her mother.

On June 29, 2012, Hara informed Fukumoto that she would be temporarily assigned to the medical records office to assist with the "backlog of chart reviews."  Fukumoto claims she was not provided orientation for the position and that she "lost valuable

nursing experience, wage differentials, [and] holiday overtime/ability to earn [Compensatory Time Off] time."  In addition, Fukumoto asserts her wages were intentionally withheld for over five pay periods.

Examined in the light most favorable to Fukumoto, under the applicable summary judgment standard, these employment actions can be construed as adverse.  Further, there are genuine issues of material fact whether the alleged adverse actions were caused by Fukumoto's reporting of incidents given the timing between her reports and the subsequent alleged adverse actions. See Griffin, 654 F. Supp. 2d at 1132 (noting temporal proximity may be a factor in determining whether a causal connection exists); see also Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004) ("A warning letter or negative review . . . can be considered an adverse employment action."); Ray, 217 F.3d at 1243 ("[L]ateral transfers, unfavorable job references, and changes in work schedules . . . . are all reasonably likely to deter employees from engaging in protected activity."); Chan v. Wells Fargo Advisors, LLC, 124 F. Supp. 3d 1045, 1056 (D. Haw. 2015) (concluding there was a genuine issue of material fact as to adverse employment action based on evidence that employee was relocated and his compensation was cut).

The State did not meet its initial burden of either negating this element of Fukumoto's HWPA claim or demonstrating that Fukumoto would be unable to carry her burden of proof at trial.  Ralston, 129 Hawaiʻi at 57, 292 P.3d at 1287.

> **3. The State provided evidence of legitimate, nondiscriminatory reasons for its employment actions.**

In its motion for summary judgment, the State asserts Fukumoto failed to establish a causal connection between the protected conduct and the employment actions.  "[A]n employer may negate causation ex post facto by presenting evidence of other reasons for [the adverse employment action] outside of the

17

protected conduct[.]"  Taqupa, 125 F. Supp. 3d at 1121 (internal quotation marks omitted) (quoting Griffin, 654 F. Supp. 2d at 1132).  Sufficient nondiscriminatory reasons capable of negating causation may be satisfied by an employer's own explanation or an employee's own insubordination.  See Chan, 124 F. Supp. 3d at 1057 (concluding there were sufficient nondiscriminatory reasons for the employee's relocation and reassignment based on the employer's statements that the employer wanted a new employee that worked "regular hours" and was more efficient).

In support of its motion for summary judgment, the State provided evidence that Matthews's investigation of EIRs against Fukumoto submitted by LPN Rubino and PMA Soriano resulted in the March 28, 2012 appraisal, in which Matthews concluded that Fukumoto "used inappropriate and derogatory language towards [PMA Soriano]," some of which infringed on his privacy right and was therefore unprofessional.  Matthews further concluded this "was not in keeping with the concept of a registered nurse serving in the role of a leader" and Fukumoto was required to make arrangements to attend staff development training on effective communication.

As for the temporary reassignment, LPN Rubino informed Matthews of an incident involving Fukumoto that Matthews construed as allegations of workplace violence.  Matthews states that these allegations triggered a hospital practice of temporarily removing Fukumoto to place distance from the complaining employee (LPN Rubino) until an investigation could be completed.  As for Fukumoto's reassignment to the medical records office, Hara attested:

> [it] was in keeping with the nature of the temporary transfer even though Fukumoto would not be required to perform actual nursing duties because (1) she retained her registered nurse position within the [SOSRP] program; (2) she retained the compensation and benefits of her position; (3) the assignment would be of a limited duration because she submitted her written response to the allegations [of workplace violence], allowing the investigation to move forward; and (4) the assignment respected her feelings towards performing nursing duties in the hospital.

Hara also attested the wage withholdings was due to "inadvertent errors committed by clerical staff within the program [that] lead to the unintentional withholding of Fukumoto's compensation." Thus, it appears to have had no relation to Fukumoto's alleged reporting.  Within one month of Fukumoto raising the issue to HSH, Fukumoto was paid all back wages that were due and owing to her.

Given the evidence in the record, we construe the State's reasons as legitimate and nondiscriminatory.

**4.     There is a genuine issue of material fact as to whether the State's proffered reasons for its actions were pretextual.**

"A plaintiff may establish pretext by 'persuading the court that a discriminatory reason more likely motivated the employer or . . . by showing that the employer's proffered explanation is unworthy of credence.'" Adams, 135 Hawaiʻi at 14, 346 P.3d at 83 (quoting Shoppe, 94 Hawaiʻi at 379, 14 P.3d at 1060).  "If the plaintiff establishes that defendant's proffered reasons were pretextual, the trier of fact may, but is not required to, find for the plaintiff." Shoppe, 94 Hawaiʻi at 379, 14 P.3d at 1060.  This is because, "[a]t all times, the burden of persuasion remains on the plaintiff" to prove that the employer's decision was discriminatory. Id. (citing Sam Teague, Ltd. v. Hawaiʻi Civil Rights Comm'n, 89 Hawaiʻi 269, 279 n.10, 971 P.2d 1104, 1114 n.10 (1999)).  "The timing of an adverse employment action in relation to a report of harassment and complaint to a supervisor can be sufficient to raise 'indirect evidence that undermines the credibility of the employer's articulated reasons.'" Patrick v. 3D Holdings, LLC, Civil No. 13-00638 JMS/KSC, 2014 WL 1094917, at *11 (D. Haw. Mar. 18, 2014) (quoting Noyes v. Kelly Servs., 488 F.3d. 1163, 1171 (9th Cir. 2007)).  "In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." Id. (internal quotations omitted) (quoting Dawson v. Entek Int'l, 630 F.3d 928, 937 (9th Cir. 2011)).

Here, in spite of the State's legitimate reasons for the employment actions, the temporal proximity between Fukumoto's protected conduct and the State's alleged retaliatory actions creates a genuine issue of material fact as to whether the complaints against Fukumoto by LPN Rubino and PMA Soriano were a pretext to single out Fukumoto for mandatory training and subsequent reassignment as a result of her earlier reports against those same co-workers.

Given the extensive record in this case, in regard to this issue, even if the State has evidence to rebut a *prima facie* case by Fukumoto, the record does not establish that Fukumoto would be unable to demonstrate that the State's proffered reasons for its actions were pretextual.  In other words, viewing the evidence in the light most favorable to Fukumoto, the State did not negate that Fukumoto could show pretext nor did it demonstrate that Fukumoto would be unable to carry her burden at trial of showing that the State's proffered reasons were pretextual.  Ralston, 129 Hawaiʻi at 57, 292 P.3d at 1287.

**III. Conclusion**

Based on the foregoing, the Circuit Court erred in granting summary judgment for the State.  Thus, the "Judgment" entered on October 6, 2016, by the Circuit Court of the First Circuit, is vacated.  The case is remanded for proceedings consistent with this decision.

DATED:  Honolulu, Hawaiʻi, February 28, 2022.

| On the briefs: | /s/ Lisa M. Ginoza<br>Chief Judge |
|---|---|
| Shawn A. Luiz,<br>for Plaintiff-Appellant | /s/ Katherine G. Leonard<br>Associate Judge |
| James E. Halvorson,<br>Nelson Y. Nabeta,<br>Charlene S.P.T. Murata,<br>Deputy Attorneys General,<br>Department of the Attorney<br>General, for Defendants-<br>Appellees | /s/ Sonja M.P. McCullen<br>Associate Judge |